**Donald Wayne MARTIN, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. 50670.**

Supreme Court of Minnesota.

July 3, 1980.

C. Paul Jones, Public Defender, and Susan Maki, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief Asst. County Atty., Appellate Division, David W. Larson and Lee W. Barry, III, Asst. County Attys., Minneapolis, for respondent.

Heard before OTIS, ROGOSHESKE, and PETERSON, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

■ Donald Wayne Martin appeals from an order denying his petition for postconviction relief which requested a new trial on the ground of newly discovered evidence. The sole issue is whether the postconviction court abused its discretion by refusing to grant the petition. Where credible newly discovered evidence is so material as to make probable a different result on retrial, a new trial may be required. We conclude, however, that the newly discovered evidence in this case does not meet these criteria and that, therefore, the trial court acted properly in denying relief.

On December 18, 1975, petitioner was convicted by a jury of the first-degree murder of Jacqueline Patterson, who was stabbed near the Mississippi River in Minneapolis. Three men were arrested in connection with the homicide—petitioner, Robert Eugene Wright and James J. Warborg. Petitioner and Wright were indicted for first-degree murder but no indictment was returned and no charges were filed against Warborg. At the time of petitioner's trial, Wright's case was pending. He provided key evidence against petitioner by his testimony that he saw the killing. Wright admitted on cross-examination that in exchange for his testimony he expected to plead guilty to manslaughter and to serve the sentence concurrently with sentences he was required to serve for violating parole on other offenses. Warborg also testified, substantially corroborating Wright's account except for the details of the actual slaying which he did not claim to have witnessed. The facts established at trial are recited in our opinion affirming the judgment of conviction, *State v. Martin*, 261 N.W.2d 341 (Minn.1977), and we incorporate that statement in deciding this appeal.

On June 25, 1976, approximately 6 months after the verdict, Carol Medina Nelson, who did not testify at the trial, hand delivered a letter to the trial judge. Nelson's letter stated that she had information that petitioner had not committed the murder which she had not disclosed at the time of trial because Kevin Owens and Muriel Deurmier had threatened her with bodily harm. The substance of the letter which served as the basis for this petition for postconviction relief and of Nelson's testimony at the hearing on the petition is as follows. In May 1975, Wright told Nelson that he was homosexual. About 2½ weeks before the murder, he indicated to her that he found petitioner sexually attractive. Several days later, Wright encountered Nelson and petitioner playing pool in a bar. Petitioner ignored Wright, and Wright, angered, remarked to Nelson that he would get even with petitioner for rejecting him.

Nelson further stated that 4 days before the murder she overheard Wright and Warborg talking in a cafe. In the course of the conversation, Wright allegedly expressed concern that a certain woman would inform the authorities that he had violated parole. He told Warborg, "I gotta get rid of her somehow, someway."

Nelson also testified that several weeks following the murder she and a male friend encountered Warborg in a cafe. Warborg allegedly stated that he was high on drugs and began to talk about the murder. According to Nelson, he related that he was standing near Wright while Wright stabbed Jacqueline Patterson. Warborg further stated that at the time of the incident he glanced up and saw petitioner standing 50 to 75 feet away. He called petitioner's name but received no response. Warborg and Wright then fled to avoid detection. They later met petitioner downtown and accepted a ride from him. Wright whispered to Warborg: "I got it man, we'll pin it on Wayne and say that we were with him and saw him do it, then we'll be free." Warborg said that Jacqueline Patterson knew that Wright had violated parole.

Warborg testified at the postconviction hearing that he saw Nelson in a cafe at approximately the time she indicated. He admitted that he had been drinking prior to their conversation but stated that he had refused to discuss the murder. He testified that Nelson had been accompanied by a female rather than a male friend when he spoke with her.

Kevin Owens and Muriel Deurmier also testified at the postconviction hearing. Each admitted being acquainted with Nelson but both of them said they were unaware that she had any information about the murder and both denied ever threatening her.

Petitioner also called James Korman, who on June 22, 1977, had written a letter to the public defender stating that while he was incarcerated in the Hennepin County Jail he overheard Wright tell another inmate that he and Warborg were going to frame a man named Wayne for murder. Although Korman signed an affidavit to that effect on March 14, 1978, he repudiated the letter and affidavit in a statement to the police and from the witness stand. He testified that petitioner had asked him to write the letter and that petitioner had shown him a letter from Nelson which led him to assume that she was participating in a plan to obtain petitioner's release. Nelson admitted that she and petitioner were good friends but stated that she had not communicated with him from the time of his arrest until October 1976 and that she had not agreed with petitioner to write a letter on his behalf.

The postconviction court denied relief on the ground that Nelson's testimony was doubtful in character and not so material as to make probable a different result if a new trial were held. The court emphasized that Nelson's testimony was uncorroborated and that it contradicted the evidence of various unimpeached witnesses. Petitioner appealed.

■ Minn.Stat. § 590.01, subd. 1 (1978), provides that a person convicted of a crime may petition the district court in which the conviction was had for a new trial upon claims that the conviction violated his rights under the constitution or laws of the United States or of Minnesota. While we have never expressly decided whether newly discovered evidence constitutes a basis for relief under the statute, in *State v. St. Christopher*, 305 Minn. 226, 232 N.W.2d 798 (1975), we refused to consider whether defendant was entitled to a new trial on

grounds of newly discovered evidence since the issue had not been presented to the trial court. We stated in dictum that defendant could present the claim in the form of a petition for postconviction relief. 305 Minn. at 238, 232 N.W.2d at 805. The ABA Standards for Criminal Justice, Post-Conviction Remedies § 2.1(a)(v) (Approved Draft 1968 and 2d ed. Tent.Draft 1978) recommend that approach, and we hold as an initial matter that a defendant may base a petition for postconviction relief on a claim of newly discovered evidence. *See State v. Sims*, 239 N.W.2d 550 (Iowa 1976).

■ The postconviction court evaluated the alleged newly discovered evidence using the standard applied in *State v. Bergeson*, 203 Minn. 88, 89, 279 N.W. 837, 838 (1938) upon a postverdict motion for a new trial:

If the new evidence is doubtful in character, not so material as to make probable a different result on a new trial, or merely cumulative or impeaching, relief will be denied, nor will relief be granted, even though very material facts have been brought to light, if they could, by the exercise of proper diligence, have been discovered and presented on the first trial. [Emphasis omitted.]

*See State v. Hill*, 253 N.W.2d 378 (Minn. 1977); *State v. Mastrian*, 285 Minn. 51, 171 N.W.2d 695 (1969); *State v. Klotter*, 274 Minn. 58, 142 N.W.2d 568 (1966). Neither the defendant nor the state disputes the applicability of this test to similar postconviction claims, and we agree that it correctly specifies the relevant considerations.

■ Applying this standard, we conclude that Nelson's testimony is doubtful in character. First, Nelson is admittedly a good friend of petitioner. Second, Nelson's story of a "frameup" is similar to Korman's which he repudiated as part of an effort, joined in by Nelson, to "spring" petitioner. Third, Owens and Deurmier deny threatening Nelson, and the allegations that they desired to prevent testimony on petitioner's behalf are unlikely in view of Owens' friendship with petitioner and flight with him to Kansas City and Deurmier's limited acquaintance with petitioner, Wright and

Nelson. Fourth, Warborg denied having discussed the murder with Nelson. Given these reasons to question Nelson's credibility and the total lack of corroboration of her testimony, we agree with the postconviction court that the new evidence does not meet the trustworthiness requirement of *Bergeson*.

█ We further conclude that Nelson's testimony would not make probable a different result on retrial. Nelson's theory of a "frameup" contradicts the trial testimony of Wright and Warborg and tends to discredit the statements of Owens and Deurmier that petitioner told them that he had committed a murder. It does not, however, challenge the unimpeached trial testimony of other of petitioner's friends who testified that he confessed the murder to them: John Stafford, petitioner's fishing companion; Irene Gunlogson, the woman with whom petitioner was living; Delores Dillworth, petitioner's ex-girlfriend; and James Delles, one of petitioner's drinking companions. Moreover, Nelson's evidence conflicts with the story given by petitioner to the police in which he stated that he and Wright had spent the evening bar hopping and the remainder of the night in a diner. We therefore agree with the postconviction court that Nelson's testimony would not make probable a different result on retrial. Since petitioner failed to establish the *Bergeson* elements [1] by a preponderance of the evidence, the postconviction court did not abuse its discretion in denying relief.

Affirmed.

1. Our conclusion that Nelson's evidence is not sufficiently reliable and material to make probable a different result on retrial makes it unnecessary for us to determine whether the evidence is solely impeachment and, if so, whether it is therefore automatically insufficient reason for a new trial under *State v. Bergeson*, 203 Minn. 85, 279 N.W. 837 (1938). *See State v. Hawkins*, 260 N.W.2d 150 (Minn.1977); *State v. Dumphey*, 4 Minn. 438 (Gil. 340).