STATE of Minnesota, Respondent,

v.

Jay E. NORREGAARD, Appellant.

No. C4–85–912.

Court of Appeals of Minnesota.

Jan. 21, 1986.

Review Granted March 14, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Anne E. Peek, Asst. County Atty., Minneapolis, for respondent.

C. Paul Jones, Minn. State Public Defender, Steven P. Russet, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and RANDALL and CRIPPEN, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Jay Norregaard appeals from a judgment of conviction for aggravated robbery in violation of Minn.Stat. §§ 609.245, 609.05 (1984), and third degree assault in violation of Minn.Stat. §§ 609.223, 609.05 (1984) following a jury trial in Hennepin County District Court. He contends the evidence is insufficient to sustain his conviction. He also argues that the trial court erred when it: (1) admitted evidence of prior convictions for impeachment purposes, (2) sentenced him concurrently for crimes arising out of the same behavioral incident, and (3) denied his motion for a new trial based on newly discovered evidence. We affirm.

## FACTS

On October 22, 1984, two men beat and robbed Thomas Kiefer near downtown Minneapolis as he was on his way home from a party at a friend's apartment. Earlier that evening appellant, Thomas Kiefer, Walter Petkiw and Thomas Standslast were together in Petkiw's apartment drinking alcohol and smoking marijuana. Petkiw lived at Pursuit, a housing project for welfare recipients which also provides meals for residents. Appellant and Standslast were also Pursuit residents.

Kiefer testified that on October 22 he cashed a payroll check and purchased some Christmas gifts for his children. He took a

bus from downtown Minneapolis to Pet-kiw's apartment, stopping at a liquor store on the way to buy beer and rum. Kiefer said he had approximately $200 when he arrived at Petkiw's between noon and 1:00 p.m. The two men consumed the beer and rum and shared three to four marijuana cigarettes. Kiefer left about 4:00 p.m. to go see about renting a room. Kiefer missed his bus, bought another twelve-pack of beer, a half-gallon of wine and returned to Petkiw's apartment.

From this point on, the State's version and appellant's version of the facts differ sharply.

The State claims that when the party broke up around 9:00 or 10:00 p.m., Petkiw and Kiefer were drunk and appellant was "high" on marijuana. Kiefer had passed out once early in the evening, but by the time he left he was aware of where he was and where he was going. Appellant offered to walk Kiefer home and Standslast followed. Kiefer testified that as they neared the Metrodome, appellant grabbed him and pinned his arms behind him. Standslast was facing Kiefer. Kiefer said he struggled and asked appellant not to beat him up. Appellant replied, "It doesn't work that way". Standslast hit Kiefer in the face and he lost consciousness. He woke up lying on the street with a bloody nose. His wallet was empty, his glasses were gone, and he was missing two front teeth.

Kiefer ran to his apartment, told his roommate about the attack, called his ex-wife, and eventually contacted the police.

Appellant's version of the events that evening were that as he and Standslast walked toward Petkiw's apartment to arrange to buy marijuana, they ran into Petkiw in the dining area.

Appellant and Standslast accompanied Petkiw back to Petkiw's apartment. Appellant opened the door and saw Kiefer standing with a can of beer in his hand. He also noticed two cases of empty beer cans in the room and a twelve-pack next to Kiefer. Appellant asked Kiefer if he could buy a "joint." Although Kiefer refused to sell appellant any marijuana he did agree to share a joint with appellant. Appellant refused a beer and, at Kiefer's request, rolled a joint because Kiefer was too drunk to do it himself. Appellant testified Kiefer was not making much sense, was very repetitious, had difficulty standing and nearly fell over. He said that Kiefer passed out several times that evening.

Around 9:00 p.m. Petkiw indicated it was time for everyone to leave. Appellant admitted he was "high" from the marijuana. He left the apartment with Kiefer and Standslast. He said they guided Kiefer out the door and had to hold him up. Appellant testified that he accompanied Kiefer, and Standslast walked in the opposite direction.

Appellant accompanied Kiefer to a 7–11 grocery store on Chicago and 16th where appellant bought a pack of cigarettes; Kiefer bought a sandwich. Appellant and Kiefer then parted, walking in opposite directions. Kiefer went north on Chicago Avenue, appellant walked south towards Park Avenue. Appellant said he last saw Kiefer staggering down the street eating his sandwich.

About a week after the incident, Kiefer gave police a formal statement and viewed photo arrays. From the array of photos, Kiefer identified appellant and Standslast as the men who robbed and beat him. Both were charged with aggravated robbery and third degree assault. Appellant was tried before a jury in Hennepin County District Court.

Prior to his testimony, the court ruled that appellant could be impeached with his prior felony convictions. The court also ruled that if Standslast testified for appellant, he could be impeached by his 1971 second degree murder conviction. Standslast refused to testify.

Appellant was convicted of aggravated robbery and third degree assault and was sentenced concurrently to 49 and 21 months in prison. The court denied his motions for judgment notwithstanding the

verdict or a new trial and for a dispositional departure.

Standslast was acquitted of the same charges following a subsequent jury trial. Appellant again moved for a new trial on grounds of newly discovered evidence or for judgment of acquittal. On May 7, 1985, the court resentenced appellant and placed him on two years probation conditioned upon serving one year in the Hennepin County Workhouse. This appeal followed.

## ISSUES

1. Is the evidence sufficient to sustain appellant's conviction?

2. Is appellant entitled to a new trial based on newly discovered evidence?

3. Did the trial court err by ruling that defendant's prior convictions were admissible for impeachment purposes?

4. Did the trial court's imposition of two concurrent sentences violate the prohibition of multiple punishment for separate offenses arising out of the same behavioral incident?

## ANALYSIS

### I.

*Sufficiency of the evidence*

Norregaard contends his conviction must be set aside because the evidence is insufficient to support it. In reviewing a claim of insufficiency of evidence, this court must view the evidence in a light most favorable to the State and determine whether, under the evidence contained in the record, a jury could reasonably find a defendant guilty of the charged offense. *State v. Brouillette*, 286 N.W.2d 702, 705 (Minn.1979). The court must assume the jury believed the State's witnesses and disbelieved any contradictory evidence. *Id.* at 705.

Appellant bases his claim of insufficient evidence on: (1) the State's unreliable eyewitness identification evidence, (2) lack of corroborative evidence by other eyewitness, (3) the fact that no substantial sum of money was recovered from him, and (4) the lack of motive.

■ The jury found Kiefer a credible witness despite minor discrepancies in his story. He never wavered in his identification of appellant as one of his assailants and he chose appellant from a photographic lineup. Appellant claims that Kiefer's physical condition and history of alcoholism and alcohol-induced blackouts should lead this court to discount his testimony. Appellant does not dispute testimony that Kiefer was with him immediately prior to the attack. Nor is there any evidence that Kiefer either blacked out or was too drunk to know what was happening to him. Immediately after the assault, Kiefer ran home and told his roommate that Standslast and appellant beat and robbed him.

■ There is no statutory or constitutional requirement of corroboration of a complainant's testimony. A verdict may be based on the testimony of a single witness. *State v. Burch*, 284 Minn. 300, 313, 170 N.W.2d 543, 552 (1969) (citation omitted). Reliability factors, go to weight given the testimony, not admissibility. *Id.* at 552.

■ It is not significant that appellant did not have a large sum of money on him at the time of his arrest, ten days after the robbery. His lack of money is not an indication of guilt or innocence. It is simply a factor for the jury to give whatever weight it deemed proper.

■ Appellant's sufficiency of the evidence argument consists solely of his contention that the jury should have believed his version of the events of October 22 instead of Kiefer's. Credibility determinations of conflicting oral testimony are for the finder of fact and rarely disturbed on appeal. *DeMars v. State*, 352 N.W.2d 13, 16 (Minn.1984). Here the record, taken in the light most favorable to the State, supports the jury's finding of guilt.

### II.

*Newly discovered evidence*

Appellant and Standslast were both charged with aggravated robbery and as-

sault. Appellant was tried first and convicted of both charges. Standslast was tried later and acquitted. Appellant now argues he is entitled to a new trial based on "newly discovered evidence." He contends that since Standslast was acquitted, he can now testify at appellant's trial, hence his testimony is newly discovered evidence.

■ A defendant may be granted a new trial on grounds of newly discovered material evidence if the evidence could not have been produced by reasonable diligence prior to the original trial. Minn.R.Crim.P. 26.04, subd. 1(1)5. Granting a new trial based on newly discovered evidence is within the trial court's discretion. This decision will not be overturned on appeal absent clear abuse. *Berry v. State*, 364 N.W.2d 795, 796 (Minn.1985).

■ Standslast's testimony is not newly discovered evidence. Appellant was aware of Standslast's existence and, in fact, attempted to call him as a defense witness. However, Standslast invoked his fifth amendment right against self-incrimination and refused to testify. Appellant has not satisfied the requirements of Minn.R. Crim.P. 26.04, subd. 1(1)5.

To be admissible, evidence must not be cumulative. Newly discovered evidence, to be grounds for a new trial, should produce a different or more favorable result. *See State v. Hagen*, 361 N.W.2d 407, 412 (Minn. Ct.App.1985). It is not clear that appellant meets either requirement. Nothing appellant suggests shows that a different jury would be likely to believe Standslast, disbelieve Kiefer, and now exonerate appellant merely because an accomplice was acquitted.

Appellant argues that justice and fairness require the court to grant a new trial. He relies on two circuit court cases, *Ledet v. United States*, 297 F.2d 737 (5th Cir. 1962) and *Newsom v. United States*, 311 F.2d 74 (5th Cir.1962) to support this proposition. We do not find these cases controlling. The conviction in each case was based on weak, circumstantial evidence. Moreover, in each case the co-defendant confessed and then sought to take *all* the blame for the crimes charged, thus exculpating appellants.

In this case, testimony between the victim and assailant conflicts. Standslast's testimony could corroborate that of appellant who declares his innocence. However, appellant has made no offer of proof on the record that Standslast would take the stand and exonerate appellant while taking all credit for the crimes to which he had previously pleaded not guilty and been acquitted. Thus appellant's situation is distinguishable from both *Ledet* and *Newson*.

In *United States v. Gustafson*, 728 F.2d 1078 (8th Cir.1984) the circuit court held appellant was not entitled to a new trial based on newly discovered evidence simply because two co-defendants, once unavailable, were available to testify at a retrial. *Id.* at 1084. The court set forth five criteria which must be met before a new trial is granted:

> (1) the evidence must be in fact newly discovered, that is, discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) it must be of such nature that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*Gustafson* 728 F.2d at 1084 (citing *United States v. Swarek*, 677 F.2d 41, 43 (8th Cir.1982), *cert. denied* 459 U.S. 1102, 103 S.Ct. 723, 74 L.Ed.2d 949 (1983)). Minnesota also requires these criteria to be met. We find that the *Gustafson* criteria have not been met by appellant.

We will not reverse the trial judge's denial of a motion for new trial absent a showing of abuse of discretion. *Martin v. State*, 295 N.W.2d 76 (Minn.1980). The record here does not support a finding that the trial court abused its discretion.

### III.

*Impeachment by prior felony conviction*

Appellant next argues that the trial court erred in admitting evidence of two prior

felony convictions. He contends the prejudicial effect of this evidence outweighs its probative value.

Appellant's two prior felony convictions were for possession of a controlled substance (1980) and for terroristic threats (1983). The trial court allowed these convictions to be used against appellant for impeachment.

Minn.R.Evid. 609(a) provides that evidence of a witness' prior criminal convictions may be admitted for impeachment if the crime:

> (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment.

A trial court's evidentiary rulings must be affirmed absent a clear abuse of discretion. *State v. Jones*, 271 N.W.2d 534 (Minn.1978).

■ In determining whether to allow use of a prior conviction, a trial court should consider such facts as: (1) the impeachment value of the prior conviction, (2) the date of the conviction and defendant's subsequent history, (3) the similarity of the prior conviction with the charged crime, (4) the importance of the defendant's testimony, and (5) the centrality of the credibility issue. *Jones*, 271 N.W.2d at 538.

In *State v. Brouillette*, 286 N.W.2d 702 (Minn.1979), the supreme court held a defendant's prior conviction for third degree criminal sexual conduct admissible to impeach him because "probative of his truthfulness." *Id.* at 708. Here, appellant's credibility was at issue. The jury had to determine which of the two witnesses, appellant or Kiefer, was believable.

Further, appellant's prior convictions were not for crimes similar to the charged crime, decreasing the likelihood the jury would use the convictions as substantive evidence of appellant's guilt. *See State v. Bettin*, 295 N.W.2d 542 (Minn.1980). Ap-

pellant's convictions were not stale, but had occurred within a four year period preceding the current offense.

■ Given these circumstances, it was not reversible error for the court to permit use of appellant's prior convictions for impeachment purposes. We note that using prior drug convictions and terroristic threat convictions to impeach an accused is not favored. This type of conviction does not directly relate to an accused's truthfulness and honesty. They contain the potential for unfairness inherent in all evidence of prior convictions used for impeachment, namely the real and substantial risk that the jury will view a defendant with prior convictions a fit candidate for punishment for the pending offense regardless of the weight of the substantive evidence.

## IV.

### Sentencing

Appellant's final issue on appeal is whether the court erred by imposing two separate, though concurrent, sentences where the offenses arose from the same behavioral incident. Minn.Stat. § 609.035 provides that:

> [I]f a person's conduct constitutes more than one offense under the laws of this state, he may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them.

Appellant was convicted of aggravated robbery and third degree assault. The trial court sentenced him to concurrent terms of 49 and 21 months. The court granted his post-trial motion for a dispositional departure from the sentencing guidelines but stayed the original sentence, put appellant on two years probation, and sentenced him to one year in the Hennepin County Workhouse.

■ Appellant argues that since both crimes arose from the same behavioral incident, imposing multiple sentences was erroneous.

In deciding whether two or more intentional crimes were part of the same course of conduct, one must focus on the factors of time and place and also consider whether the segments of conduct involved were motivated by an effort to obtain a single criminal objective.

*State v. Southard*, 360 N.W.2d 376, 384 (Minn.Ct.App.1985) (*pet. for rev. denied* April 12, 1985 (citations omitted). *See also State v. Powless*, 272 N.W.2d 258 (Minn. 1978). Here, there is evidence that the underlying conduct was divisible and motivated by appellant's desire to obtain two different criminal objectives.

These facts can be distinguished from *Langdon v. State*, 375 N.W.2d 474 (Minn. 1985) where the supreme court held that burglarizing four buildings in a single apartment complex was a unitary offense under Minn.Stat. § 609.035. The court relied on the fact that all of the buildings were part of a single complex under single ownership. They also focused on the defendant's desire to obtain a single criminal objective. *Id.* 375 N.W.2d at 476 (citing *State v. Johnson*, 273 Minn. 394, 401, 141 N.W.2d 517, 524–25 (1966)).

Appellant argues that the assault upon Kiefer was the mechanism employed to overcome Kiefer's will or power to resist. However, Kiefer testified that he offered to give the two men his money and said, "Don't beat me up. You can take my money, but don't beat me up." He testified that appellant replied, "It doesn't work that way." Beating Kiefer and rendering him unconscious was unnecessary to commit the crime of aggravated robbery. The beating did not help appellant achieve the criminal objective of getting Kiefer's money. That had been accompanied by appellant's instilling fear in Kiefer prior to the physical assault. The trial court did not err by imposing concurrent sentences for these offenses.

## DECISION

The verdicts of guilty were supported by the evidence. Appellant is not entitled to a new trial on his claim of newly discovered evidence. It was not reversible error to admit appellant's prior convictions for impeachment purposes. The court properly imposed two concurrent sentences.

Affirmed.