**STATE of Minnesota, Respondent,**

v.

**Shane Scott STONE, Appellant.**

**No. A08–0769.**

Court of Appeals of Minnesota.

July 7, 2009.

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN, and Timothy R. Faver, Beltrami County Attorney, Bemidji, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by PETERSON, Presiding Judge; CONNOLLY, Judge; and CRIPPEN, Judge.*

## OPINION

PETERSON, Judge.

In this appeal from a conviction of aiding and abetting first-degree aggravated robbery, appellant argues that the district court erred by (1) admitting as a recorded recollection an audio recording of an eyewitness's police interview and (2) admitting evidence of appellant's prior convictions for impeachment purposes. In a pro se supplemental brief, appellant argues that the evidence was insufficient to support his conviction and that the district court erred by (1) not granting a continuance to secure the presence of a witness and (2) admitting evidence that a motorcycle was used to commit the offense. We affirm.

## FACTS

D.B. lived in a house with his long-time girlfriend, A.J., their two young children, and A.J.'s father, G.J. At approximately 12:30 a.m. on April 23, 2007, D.B. heard someone pound on the door and demand to use the phone. D.B. yelled through the door that there was no phone in the house, but the pounding intensified to the point

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

that the door began to give way. While A.J. struggled to hold the door, D.B. ran to wake G.J. After D.B. returned with G.J., two shots were fired, and one of them struck G.J.

The door caved in, and two men entered the house. One of the intruders was carrying a gun, and his face was covered by a bandana; the other was armed with a taser, and his face was not covered. One of the men told D.B. to "give it up," apparently referring to money. While the man without a mask remained inside the house with A.J. and G.J., D.B. led the masked man, who was pointing a gun at D.B.'s head, outside to a car, where D.B. retrieved $450 in cash from the glove compartment. The masked man demanded more money, and D.B. turned out his pockets to show that he did not have any more. D.B. and the masked man were soon joined by the other intruder, who also demanded more money. When D.B. repeated that he did not have any more, the other intruder shot him with the taser, and both intruders ran off into the woods.

When the police arrived, D.B. and A.J. identified the intruder without a mask as appellant Shane Stone. Approximately four hours later, the police apprehended appellant, who was hiding in the underbrush less than one mile from the victims' home. Several days later, D.B., A.J., and G.J. each identified appellant in separate photo line-ups. Appellant was charged with first-degree burglary in violation of Minn.Stat. § 609.582, subd. 1(c) (2006), and aiding and abetting first-degree aggravated robbery in violation of Minn.Stat. § 609.245, subd. 1.(first-degree aggravated robbery), .05 (aiding-and-abetting liability) (2006).

D.B., A.J., and G.J. testified at appellant's jury trial, which was held nine months after the robbery occurred. D.B. and A.J. identified appellant as the intruder without a mask. G.J. was not able to recognize appellant in court. When asked about whether he had identified someone during a photo line-up, G.J. initially stated that he had not, but after his memory was refreshed by looking at a document that he saw during the line-up, G.J. recalled picking out a photograph. G.J. also initially testified that he did not get a good look at the man without a mask, but after being shown statements that he made during his police interview, he stated, "I can't say for sure right now." G.J. also had difficulty remembering details of the physical description of the intruder that he gave to the police, even after he was shown his prior statements. But G.J. agreed that the witness statement shown to him was "an accurate reproduction of the questions [that he was] asked and the answers that [he gave]." Over defense objection, the district court permitted the state to play the original audio recording of G.J.'s police interview as a recorded recollection under Minn. R. Evid. 803(5).

After an initial deadlock, the jury acquitted appellant of burglary and found him guilty of aiding and abetting first-degree aggravated robbery. This appeal followed.

## ISSUES

I. Did the district court abuse its discretion by admitting the audio recording of G.J.'s police interview as a recorded recollection?

II. Did the district court clearly abuse its discretion by permitting the state to impeach appellant with evidence of his prior convictions?

III. Did the district court abuse its discretion by not granting a continuance to allow appellant to locate a witness?

IV. Did appellant preserve his claim that evidence about motorcycle use was improperly admitted?

V. Is the evidence sufficient to support appellant's conviction?

## ANALYSIS

### I.

 Appellant challenges the admission of the audio recording of G.J.'s police interview as a recorded recollection under Minn. R. Evid. 803(5). Evidentiary rulings are generally left to the district court's sound discretion and will not be disturbed on appeal absent a clear abuse of that discretion. *State v. Amos*, 658 N.W.2d 201, 203 (Minn.2003).

The state does not dispute that the recorded statement was hearsay. *See* Minn. R. Evid. 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"). Hearsay is inadmissible unless it falls within an exception to the hearsay rule. Minn. R. Evid. 802.

The district court ruled that the recording fell within the recorded-recollection exception to the hearsay rule. That exception excludes from the hearsay rule, even though the declarant is available as a witness,

> [a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.[1]

Minn. R. Evid. 803(5).

*Insufficient recollection*

Appellant argues that G.J.'s recorded statement was not admissible under rule 803(5) because G.J. did not claim that his memory was insufficient to allow him to testify fully and accurately about the robbery, and G.J. never responded to any question at trial by saying "I don't remember" or "I don't know." In making this argument, appellant emphasizes the fact that when the prosecutor asked G.J. at trial whether he felt that he had sufficient recollection to testify fully and accurately about what happened that night, instead of answering "no," G.J. said, "That's all I remember right now."

But rule 803(5) does not require that a witness realize and claim that his recollection is insufficient; it requires that a witness "has insufficient recollection to testify fully and accurately." G.J.'s statement, "[t]hat's all I remember right now," indicated insufficient recollection if the audio-recorded police interview contained evidence that G.J. had not been able to remember at trial.

At trial, when G.J. was asked whether he got a good look at the face of the intruder who came into the bedroom, he answered, "No, he just appeared briefly and left." The prosecutor then showed G.J. a transcript of the statement that G.J. made to police during the morning after the robbery and directed G.J.'s attention to the question "And did you get a good look at his face?" and G.J.'s answer "Yeah he had glasses and he's light complected." After giving G.J. an opportunity to review the statement, the prosecutor asked G.J.,

---

1. The audio recording was played to the jury in the courtroom; it was not received as an exhibit.

"Now, has reviewing that document refreshed your recollection as to whether or not you got a good look at the face of this man?" G.J. answered, "I can't say for sure right now."

Following up on this line of questioning, defense counsel asked G.J., "So having had your recollection refreshed by looking at your statement, on that night you did indicate to the officers that you thought that the gentleman who came into the room, the intruder in the room with you, had a taser and glasses?" G.J. responded, "Yeah, I seen the taser but I'm not sure about the glasses. I thought I seen a pair, but I'm not sure."

These exchanges between G.J. and the prosecutor and defense counsel indicated that, at trial, G.J. was having difficulty recalling what he saw during the robbery. G.J.'s trial testimony also indicated other memory problems because G.J. could not recall that he picked out a photograph during a photo line-up.[2]

Appellant correctly points out that G.J.'s trial testimony included several details about the robbery and argues that these details demonstrate that G.J.'s recollection of the robbery was sufficient. But the committee comment to rule 803(5) states that "[t]he rule does not require a total lack of memory" for admissibility. Minn. R. Evid. 803(5), 1989 comm. cmt. Rather, it requires only that the witness's recollection at trial be "impaired to such an extent that he is unable to testify *fully* and accurately." *Id.* (emphasis added). In other words, a recorded recollection may be used to supplement incomplete memory when a witness cannot fully remember an incident and, therefore, cannot "testify fully and accurately" about it. In light of the uncertainty of memory shown by G.J.'s trial testimony, the district court did not clearly abuse its discretion when it concluded that G.J. had insufficient recollection to testify fully and accurately about the robbery.

*Made or adopted by the witness*

Appellant also argues that the recording of G.J.'s police interview was inadmissible because it was not shown that G.J. adopted the recording. Citing *United States v. Mornan*, 413 F.3d 372, 378 (3d Cir.2005), appellant contends that G.J. did not make the recording, and, therefore, the state needed to show that he had reviewed and adopted the recording at a time when the robbery was fresh in his memory. Although *Mornan* involved a witness's videotaped deposition, the record at issue in *Mornan* was not the videotape; it was a written record of a previous statement by the witness that was shown to the witness during the deposition. *Mornan*, 413 F.3d at 375. When the government attempted to offer the substance of the previous statement into evidence as a past recollection recorded under Fed.R.Evid. 803(5),[3] the district court ruled that the statement did not qualify. *Id.* The *Mornan* court stated that rule 803(5) "requires the witness to have *either* made the record herself, or to have reviewed and adopted the statement, at a time when the matter it concerned was fresh in her memory." *Id.* at 377 (emphasis added). The court concluded that because the government had not established that the written recording was either made or adopted by the witness, the district court correctly held that rule 803(5) did not apply. *Id.* at 378.

We have not found any controlling authority that addresses whether a declarant

---

**2.** Because the photo line-up occurred several days after the robbery, G.J.'s inability to remember the line-up does not directly demonstrate an inability to remember the robbery.

**3.** There are some minor textual differences between Fed.R.Evid. 803(5) and Minn. R. Evid. 803(5), but the substance of both rules is the same.

whose voice was electronically recorded by a device operated by someone other than the declarant may be considered to have made the record of what the declarant said. But the reasoning of the Vermont Supreme Court in *State v. Marcy*, 165 Vt. 89, 680 A.2d 76 (1996), persuades us that the district court did not abuse its discretion when it allowed the jury to hear the recording of G.J.'s police interview. In *Marcy*, a police officer tape recorded the officer's interview of an assault victim, and the trial court found that the statement satisfied the requirements of Vt. R. Evid. 803(5).[4] 680 A.2d at 77–78. On appeal, the defendant argued that the statement should not have been admitted and emphasized that the statement was not sworn and that the victim never affirmed the truth or accuracy of the statement when it was made. *Id.* at 78–79. In rejecting this argument, the Vermont Supreme Court stated:

> Nothing in the language of the rule indicates that, to be admissible, the prior statement must be sworn, or that the *witness* must affirm the accuracy of the prior statement.
>
> A number of courts have ruled statements inadmissible as past recollection recorded because the statements were not sworn, signed by the witness, or otherwise affirmed by the witness as accurate. Closer examination of those cases reveals, however, that the statements involved were not prepared by the witness, but by another person, usually a law enforcement agent. Understandably, where a prior statement was prepared by a person other than the witness, courts have relied on or even required evidence that the witness had sworn or otherwise affirmed the accuracy of the prepared statement, to satisfy

the requirement that the witness adopted the statement.

> Here, there is no dispute that the witness herself gave the tape-recorded statement. The question before us is whether the State presented sufficient evidence to show that the tape-recorded statement accurately reflected the witness's knowledge of the assault.

*Id.* at 79 (citations omitted).

The *Marcy* court then considered the evidence of the tape-recorded statement's accuracy that the trial court had relied upon in admitting the recording and determined that "although the victim did not sign the statement, that factor is much less important because the statement is a tape-recording in the victim's own voice." *Id.* at 79–80. The court concluded that the other evidence relied on by the trial court was sufficient to establish the statement's accuracy and that the tape-recorded statement was properly admitted as a past recollection recorded. *Id.* at 80.

As in *Marcy*, there is no real dispute that G.J. made the statements on the audio recording. There is no claim that the voice on the recording is not G.J.'s voice or that the recording does not accurately reflect what G.J. said during the interview. The record demonstrates that G.J. gave the statement at 4:23 a.m. on April 23, 2007, which was only about four hours after the robbery occurred, and appellant has not identified anything about the circumstances under which G.J. gave the statement that suggests that the audio-recorded statement does not accurately reflect G.J.'s knowledge of the assault. Therefore, we conclude that the district court did not abuse its discretion when it admitted the audio recording of G.J.'s police interview under rule 803(5).

---

**4.** There are some minor textual differences between Vt. R. Evid. 803(5) and Minn. R. Evid. 803(5), but the substance of both rules is the same.

## II.

Appellant challenges the district court's ruling that the state could impeach him with evidence of his past convictions of third-degree assault, felon in possession of a firearm, and fourth-degree controlled-substance offense. The district court's ruling on the impeachment of a witness by a prior conviction is reviewed under a clear-abuse-of-discretion standard. *State v. Ihnot*, 575 N.W.2d 581, 584 (Minn.1998). A felony conviction may be admitted for impeachment purposes provided that ten or fewer years have elapsed since the conviction and the probative value of the evidence outweighs its prejudicial effect. Minn. R. Evid. 609(a)(1), (b).

The factors to consider when determining whether probative value outweighs prejudicial effect, which are known as the *Jones* factors, are

(1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*Ihnot*, 575 N.W.2d at 586 (quoting *State v. Jones*, 271 N.W.2d 534, 538 (Minn.1978)).

*Impeachment value*

The supreme court has concluded that Minn. R. Evid. 609 "clearly sanctions the use of felonies ... not directly related to truth or falsity for purposes of impeachment, and thus necessarily recognizes that a prior conviction, though not specifically involving veracity, is nevertheless probative of credibility." *State v. Brouillette*, 286 N.W.2d 702, 708 (Minn.1979); *see also State v. Head*, 561 N.W.2d 182, 186 (Minn. App.1997) (explaining that under rule 609(a), a crime involving dishonesty or false statement is automatically admissible and admission of other crimes is discretionary with district court), *review denied* (Minn.1997). "[I]mpeachment by prior crime aids the jury by allowing it 'to see "the whole person" and thus to judge better the truth of his testimony.'" *Brouillette*, 286 N.W.2d at 707 (quoting *City of St. Paul v. DiBucci*, 304 Minn. 97, 100, 229 N.W.2d 507, 508 (1975)). "Lack of trustworthiness may be evinced by [an] abiding and repeated contempt for laws [that one] is legally and morally bound to obey...." *Id.* (quotation omitted).

Appellant argues that it is time for Minnesota to reexamine the whole-person rationale. Although applying the whole-person rationale to admit evidence of convictions of offenses that do not specifically involve veracity has been criticized, it remains within the district court's discretion. *See State v. Flemino*, 721 N.W.2d 326, 328–29 (Minn.App.2006) (noting in upholding admission of burglary and controlled-substance offenses for impeachment, that despite widespread criticism of whole-person rationale, rule 609 reflects broader credibility concept and court of appeals lacks authority to alter rule adopted by supreme court); *State v. Norregaard*, 380 N.W.2d 549, 554 (Minn.App.1986) (noting that use of prior controlled-substance and terroristic-threats convictions to impeach is disfavored but nonetheless affirming admission of that conviction), *aff'd as modified*, 384 N.W.2d 449 (Minn.1986). The district court did not err in determining that under the whole-person rationale, appellant's prior convictions have impeachment value.

*Dates of convictions*

Appellant does not dispute that this factor favors admission.

*Similarity of past crime and charged crime*

Under the third *Jones* factor, the district court must consider the similarity of the past crime and the charged crime in light of the increased probability that when the past crime is similar to the charged crime, "the jury will use the evidence substantively rather than merely for impeachment purposes." *State v. Bettin,* 295 N.W.2d 542, 546 (Minn.1980). Appellant argues that his prior assault and firearm-possession offenses are sufficiently similar to the current robbery offense, which involved an assault and firearm, so that this factor weighs against their admission. Appellant suggests that if any of his prior convictions was needed for impeachment, the district court should have allowed only the controlled-substance conviction to be used, because the current charge had nothing to do with drugs. But appellant's argument fails because the concern underlying this *Jones* factor is less pressing where, as here, the claimed similarity exists only at an abstract and conceptual level. *See Flemino,* 721 N.W.2d at 329 (rejecting defendant's argument that prior burglary conviction was similar to defendant's robbery charge). Furthermore, any risk that the jury would improperly use the prior-conviction evidence would have been reduced by cautionary instructions, which the district court said it would give and which we must presume that the jury follows. *Id.*

*Importance of the appellant's testimony and centrality of credibility issue*

Appellant argues that because only he could explain what he was doing in the woods in the middle of the night, his testimony was crucial to undercut D.B.'s and A.J's testimony that appellant was one of the robbers, which weighs against admitting evidence of his prior convictions. *See State v. Gassler,* 505 N.W.2d 62, 67 (Minn. 1993) (stating that if the admission of prior convictions prevents a jury from hearing a defendant's version of events, this weighs against admission of prior convictions). But because only appellant could provide this testimony, it is also true that his credibility was centrally important and the need for impeachment evidence was greater, which weighs in favor of admitting evidence of the prior convictions. *See Bettin,* 295 N.W.2d at 546 (stating that if defendant's credibility is the central issue in the case, a greater case can be made for admitting impeachment evidence because the need for the evidence is greater).

Appellant concedes that his credibility was crucial to his case, but he argues that his credibility could have been adequately challenged using only his controlled-substance conviction. However, we review the district court's ruling on the use of impeachment evidence to determine whether the district court clearly abused its discretion, and even if appellant's controlled-substance-offense conviction had significant impeachment value by itself, the district court did not clearly abuse its discretion by also permitting the use of evidence that would have shown the jury that appellant had been convicted more than once. *See Brouillette,* 286 N.W.2d at 707 (explaining that underlying reason for whole-person rationale is that it is important for jury to know what sort of person is asking to be believed).

Because only one *Jones* factor weighs against admission, the district court did not abuse its discretion in ruling that appellant's prior convictions would be admissible for impeachment purposes. *See State v. Hochstein,* 623 N.W.2d 617, 624–25 (Minn.App.2001) (affirming admission of prior conviction when first *Jones* factor was neutral, second and third factors weighed against admission, and fourth and

fifth factors weighed in favor of admission).

### III.

In a pro se supplemental brief, appellant argues that the evidence was insufficient to support his conviction and that the district court erred by (1) not granting a continuance to secure the presence of a witness and (2) admitting evidence that a motorcycle was used to commit the offense.

*Denial of continuance*

Whether to grant a continuance is a matter within the district court's discretion, and we will not reverse a conviction based on the denial of a motion for a continuance absent a clear abuse of that discretion. *State v. Rainer*, 411 N.W.2d 490, 495 (Minn.1987). In doing so, we examine the circumstances before the district court when the motion was made to determine whether the denial of a continuance prejudiced defendant by materially affecting the outcome of the trial. *State v. Turnipseed*, 297 N.W.2d 308, 311 (Minn. 1980).

Appellant requested a continuance to locate L.H., whose testimony presumably would have been used to impeach D.B.'s statement that he was not a drug dealer. Shortly before trial, appellant delivered a subpoena to L.H.'s last known address, but L.H. did not respond. The district court acknowledged that the defense had "worked very hard" to track down L.H., but it declined to either issue a warrant for her arrest or continue the trial because it was questionable whether L.H. had actually been at her residence to receive the subpoena. The district court noted that the extreme cold weather at the time, with wind chills as low as –70° F, made it likely that L.H. was at a warmer residence for the winter.

Despite the Sixth Amendment's guaranty of compulsory process, it is not an abuse of discretion to refuse to grant a continuance to locate a witness when doing so would not likely result in actually securing the witness's presence at trial. *See Fitzpatrick v. Procunier*, 750 F.2d 473, 477 (5th Cir.1985) (upholding denial of continuance when sheriff's deputies were unable to serve arrest warrants and subpoena and record did not suggest that defendant might have been more effective in locating witness). Appellant's apparently diligent effort to locate L.H. failed, and the record contains no suggestion that L.H. would likely have been located if the district court had granted additional time to locate her. Also, it is questionable whether L.H.'s testimony would have had any discernible effect on the verdict. Even if she had successfully impeached D.B.'s credibility, her testimony would have had no effect on either A.J.'s or G.J.'s identification of appellant.[5] The district court did not abuse its discretion when it denied appellant a continuance.

*Motorcycle evidence*

Appellant challenges the admission of evidence that a motorcycle was used to commit the crime. Appellant declares that he neither owned nor used the motorcycle and that the state used it as a "red herring" to distract the jury. But appellant's argument is limited to conclusory allegations that the state fabricated evidence for the sole purpose of prejudicing him. Furthermore, even if the argument had support in the record, appellant waived the argument by failing to object to any of the motorcycle evidence at trial. *See State v. Outlaw*, 748 N.W.2d 349, 355–56 (Minn. App.2008) ("Ordinarily, failure to object to

---

**5.** G.J. did not identify appellant at trial but did identify him during the audio-recorded interview that was admitted as a recorded recollection.

evidence at trial waives the issue on appeal."), *review denied* (Minn. July 15, 2008).

*Sufficiency of the evidence*

 When reviewing a challenge to the sufficiency of the evidence, we conduct a painstaking analysis of the record to determine whether the fact-finder could reasonably find the defendant guilty of the offenses charged based on the facts in the record and the legitimate inferences that can be drawn from them. *State v. Thunberg*, 492 N.W.2d 534, 538–39 (Minn.1992). In doing so, we view the evidence in the light most favorable to the verdict and assume that the fact-finder believed the evidence supporting the verdict and disbelieved any contrary evidence. *State v. Chambers*, 589 N.W.2d 466, 477 (Minn. 1999). We will not disturb a guilty verdict if the fact-finder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, reasonably could conclude that the defendant was guilty of the charged offense. *State v. Alton*, 432 N.W.2d 754, 756 (Minn.1988).

Appellant's arguments regarding the sufficiency of the evidence simply challenge the eyewitnesses' credibility. Notwithstanding appellant's claims that the witnesses' drug use, drug dealing, gun possession, gambling, and other vices rendered them unworthy of belief, the jurors were entitled to determine credibility. *See Francis v. State*, 729 N.W.2d 584, 589 (Minn.2007) ("Assessing the credibility of a witness and the weight to be given a witness's testimony is exclusively the province of the jury."). Thus, the jury was free to believe the eyewitnesses' testimony about the circumstances of the robbery and the identity of the robbers.

## DECISION

The district court did not abuse its discretion by admitting as a recorded recollection the audio recording of G.J.'s statements to police. The district court did not abuse its discretion by permitting the state to impeach appellant with evidence of his prior convictions. The district court did not abuse its discretion by refusing to grant a continuance to allow appellant to locate a witness. Appellant waived any challenge to the admission of evidence about the use of a motorcycle to commit the offense. The evidence is sufficient to support appellant's conviction.

**Affirmed.**