STATE of Minnesota, Respondent,

v.

George O. HOOD, Appellant.

No. C0–86–1601.

Court of Appeals of Minnesota.

May 12, 1987.

Review Denied June 9, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Beverly J. Wolfe, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by PARKER, P.J., and SEDGWICK and LANSING, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

George Hood appeals his conviction on two counts of third-degree criminal sexual

conduct and one count of false imprisonment. He claims the evidence was insufficient to convict, and that he was denied a fair trial by the court's rulings and by ineffective assistance of counsel. We affirm.

## FACTS

Early in the morning of January 19, 1986, Stacy, age 14, was walking home from a party when George Hood grabbed her from behind, handcuffed her, pushed her into his car and drove her to his apartment building. One month earlier Stacy had spent a night in Hood's apartment when a friend who lived in the same building was not home. Hood had let her sleep on his couch and had not molested her. She had given him her name and phone number.

Stacy testified that on this occasion Hood threatened her, pulled her clothes off, spanked her with a belt, burned her with a cigarette and started burning her pubic hairs. He forced her to have intercourse. At one point she tried to pull a knife from her purse, but he stopped her. She also tried to hit him with a hammer lying in the apartment. They had sex once more in the morning and she escaped when he fell asleep.

When she reached home, she and her mother flagged down a police car and reported the rape. The officer testified Stacy was very shaken and emotionally upset.

When police went to the apartment, Hood was gone. He did not return after that date. The building manager testified he was surprised Hood would move out because his rent was subsidized and he had only been there six months. Hood called several times about moving his things, and voiced concern about the police tracing the call. Police executed a search warrant and found objects described by Stacy as being in the apartment.

During her examination at Hennepin County Medical Center, Stacy was crying and acted scared. She stated there had been intercourse three times. The emergency room physician also testified Stacy was very distraught.

The sexual assault exam revealed traces of seminal fluid. According to Dr. Garry Peterson, Hennepin County Medical Examiner, this indicated that intercourse most likely occurred after 10:30 p.m. to 12:30 a.m. on the night of January 18–19.

Hood presented two witnesses, Frank Gines and Glenda Stanback, residents of the same apartment building, who testified that Hood had spent from 45 minutes to 90 minutes about 1:55 a.m. on January 19th interceding in an argument they were having. Neither witness told this story to police when they learned of Hood's arrest.

Hood complained about his public defender both in a long in-chambers conference and in front of the jury. He was also uncooperative on direct examination and tried to tell his story to the jury in narrative fashion. Hood claimed Stacy had stolen $100 and some cigarettes from him.

On cross-examination, he admitted Stacy was at his apartment on January 19, and that he knew she was only 14 years old.

At the end of direct examination, his counsel asked Hood if he had anything else to tell the jury. He said, "Yes," but volunteered to wait for the prosecutor to conduct cross-examination. At the end of cross-examination, when his counsel declined to do redirect, Hood asked:

> Does that mean I can't talk now? Are you going to ask me now if I want to say what I want to say?

The prosecution objected and Hood was not allowed to continue.

Hood attempted to dismiss his counsel and proceed pro se; however, the trial court refused because Hood stated he did not understand the waiver form. After all testimony was presented, Hood stated he understood the form, and he presented closing argument.

## ISSUES

1. Did the trial court err in its evidentiary rulings and in denying appellant's demand to represent himself?

2. Was appellant denied effective assistance of counsel and his right to testify on his own behalf?

3. Was the evidence sufficient to sustain the convictions?

## DISCUSSION

Hood claims the trial court erred in permitting evidence of his rent subsidy and in preventing him from questioning Stacy about a prior theft charge.

The State contends the rent subsidy was relevant to establish flight.

■ This evidence was only marginally relevant to the issue of flight, which was uncontested. The evidence of the rent subsidy tended to show only that Hood would not leave the apartment without good reason. The prejudicial effect of this evidence exceeded its probative value, but it was not so prejudicial as to be reversible error.

■ Hood's argument that he was prevented from cross examining Stacy on a prior theft charge is without merit. The charges had been dismissed, so there was no "conviction" to be used for impeachment purposes even if a juvenile adjudication were admissible for this purpose. *See* Minn.R.Evid. 609(a) (allowing impeachment by prior conviction); (d) (excluding juvenile adjudications).

■ The test for evaluating competency of counsel is

whether the attorney in the case exercised the customary skills and diligence that a reasonably competent attorney would exercise under similar circumstances.

*State v. White*, 349 N.W.2d 603, 604 (Minn. Ct.App.1984). There must be a showing of actual prejudice, which requires this court to consider the totality of the evidence. *Gates v. State*, 398 N.W.2d 558, 562 (Minn. 1987).

■ In *Gates* the court held that a defendant claiming inadequate investigation must show actual prejudice, i.e., that the investigation would have uncovered someone or something, which would have made a difference in the outcome. *Id.* at 563. Hood has not shown this.

Many of Hood's complaints were caused by his own refusal to cooperate with counsel, particularly his failure to give counsel biographical information or a summary of his testimony. This lack of cooperation was evident on direct examination of Hood, and may have prejudiced his case.

The remainder of Hood's claims relate solely to trial tactics and fall far short of proving ineffectiveness of counsel.

Hood claims he was denied his right of self-representation when the court refused to allow him to proceed pro se.

■ A defendant has the right to refuse assistance and represent himself at trial if he makes a knowing and intelligent waiver of the right to counsel. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The trial court made an extensive inquiry into Hood's ability to waive counsel. *See State v. Bauer*, 310 Minn. 103, 122–23, 245 N.W.2d 848, 858–59 (Minn.1976). Hood stated three times he did not understand the waiver, but did not point out what he did not understand. The trial court's action in rejecting the waiver was discretionary.

Hood testified in his own behalf, but was not allowed to testify on redirect after he apparently cut short his testimony on direct to allow cross-examination. The decision not to offer redirect was that of Hood's counsel, who still represented him. Hood, however, wanted to offer further narrative testimony.

■ In the exercise of his right to present evidence, the defendant must comply with established rules of procedure and of evidence. *State v. Alowonle*, 356 N.W.2d 385, 387 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. January 14, 1985). When Hood yielded to cross-examination, he yielded his right to offer further testimony except that which would fall within the scope of cross-examination. Cross-examination here was very short, and limited in scope. Counsel, in declining re-direct, was making a tactical decision. If Hood had intended to offer further narrative tes-

timony, he lost that right through a misunderstanding of the rules. This loss could have been prevented had Hood cooperated with counsel and provided him a summary of his testimony.

Hood failed to object to what he now claims were improper closing arguments by the prosecutor. *See State v. Wahl*, 394 N.W.2d 536, 539 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. November 19, 1984) (non-objecting defendant forfeits the issue on appeal).

■ There is no question of the sufficiency of the evidence to prove the statutory rape charge. Hood admitted Stacy was at his apartment the whole night and admitted he knew she was 14 years old. *See* Minn.Stat. § 609.344, subd. 1(b) (Supp. 1985). He did not explicitly deny having intercourse. The sexual assault exam the next day tested positive for seminal fluid, indicating intercourse within 24 hours.

The alleged contradictions in Stacy's statements related to the confinement or restraint required for false imprisonment and the force of coercion required for the other criminal sexual conduct charge. In reviewing a claim of insufficient evidence, this court must view the evidence in the light most favorable to the State and assume the jury believed the State's witnesses. *State v. Parker*, 353 N.W.2d 122, 127 (Minn.1984). The jury, however, found Hood not guilty of kidnapping, apparently disbelieving Stacy's testimony of an initial abduction with handcuffs.

Although there were inconsistencies between Stacy's trial testimony and her statements to police, her testimony was corroborated by her prompt complaint and distraught condition. *State v. DeBaere*, 356 N.W.2d 301, 304 (Minn.1984). The photos of Hood's apartment, showing a belt, hammer, the mirror, and even matches, further corroborated her testimony. A reviewing court must view the evidence in the light most favorable to the State.

## DECISION

Hood has not shown ineffective assistance of counsel or a denial of the right of self-representation. Although he may have been denied an opportunity to give narrative testimony, he has not indicated what that testimony would have been. The evidence was sufficient to support the convictions.

Affirmed.