**STATE of Minnesota, Respondent,**

v.

**John E. OUTLAW, Appellant.**

**No. A07–0245.**

Court of Appeals of Minnesota.

May 6, 2008.

Lori Swanson, Attorney General, and Susan Gaertner, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Jodie L. Carlson, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; KALITOWSKI, Judge; and CONNOLLY, Judge.

## OPINION

KALITOWSKI, Judge.

Appellant John E. Outlaw challenges his conviction of and sentence for first-degree burglary. Appellant argues that: (1) the district court's determination that his out-of-state convictions are felonies under Minnesota law violated his right to a jury trial; (2) the state failed to prove that his out-of-state convictions are felonies under Minnesota law; (3) there was insufficient evidence to support his burglary conviction; (4) there was insufficient evidence that the current offense was part of a pattern of criminal conduct; (5) the prosecutor committed misconduct; and (6) appellant received ineffective assistance of counsel.

## FACTS

On June 28, 2006, around 1:00 a.m., Paj Yang and her fiancé, John Dittbenner, were at their home watching a movie. Yang heard her dog barking and noticed that the garage lights were on. Yang and Dittbenner went out to the garage and saw that the padlock was gone. Dittbenner approached the garage and began yelling at an intruder. Subsequently, Dittbenner and the intruder began scuffling inside the garage, with Dittbenner preventing the intruder from getting out the door. Yang was standing two to three feet from the intruder and got a 30–to–60–second look at his face. Dittbenner was face-to-face with the intruder while keeping him in a headlock "for awhile." The intruder eventually dug his hands into Dittbenner's eyeball, causing Dittbenner to let him go. The intruder then hit Dittbenner with a trash can and ran away. Dittbenner sustained minor injuries.

The next day, a police officer contacted Yang and Dittbenner at their home. The officer presented a photographic array containing six pictures, including one of

appellant. The officer first asked Dittbenner, outside of Yang's presence, if he could identify the garage intruder from among the six pictures. Dittbenner picked out appellant's picture, indicating that he was certain that appellant was the intruder. The officer then presented the array to Yang, who also indicated she was certain that appellant was the intruder. Yang and Dittbenner did not communicate with each other during this process.

Appellant was charged with and found guilty of first-degree burglary in violation of Minn.Stat. § 609.582, subd. 1(c) (2006). The state filed a motion for an aggravated sentence under Minn.Stat. § 609.1095, subd. 4 (2006). The state presented evidence of appellant's 11 prior felony convictions at the *Blakely* hearing, and the jury returned a special-verdict form finding that the burglary was committed as part of a pattern of criminal conduct. The district court sentenced appellant to the statutory-maximum sentence of 20 years in prison.

## ISSUES

1. Did the district court violate appellant's right to a jury trial by determining that appellant's out-of-state convictions qualify as felonies under Minnesota law?

2. Did the district court err in determining that appellant has five prior felony convictions?

3. Does sufficient evidence support appellant's conviction?

4. Does sufficient evidence support the jury's finding that appellant's conduct was part of a pattern of criminal conduct?

5. Did the prosecutor commit misconduct?

6. Did appellant receive ineffective assistance of counsel?

## ANALYSIS

### I.

■ Appellant argues that the district court's determination as to whether his out-of-state convictions are felonies under Minnesota law violates the principles set out by the Supreme Court in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We disagree.

In *Apprendi v. New Jersey*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000). Applying *Apprendi*, *Blakely* held that an upward durational departure from the statutory-maximum sentence based on a judge's findings, rather than those of a jury, is invalid under the Sixth Amendment right to trial by jury. 542 U.S. at 301–05, 124 S.Ct. at 2536–38.

Minn.Stat. § 609.1095, subd. 4 (2006), provides: "[T]he judge may impose an aggravated durational departure from the presumptive sentence up to the statutory maximum sentence if the factfinder determines that the offender has five or more prior felony convictions and that the present offense is a felony that was committed as part of a pattern of criminal conduct." In *State v. Adkins*, we held that the statute is unconstitutional "to the extent that it authorizes a judicial finding that a pattern of criminal conduct exists."[1] 706 N.W.2d 59, 64 (Minn.App.2005). But we have not addressed whether a judicial find-

---

1. The analysis in *Adkins* was based on the 2004 version of Minn.Stat. § 609.1095. In 2005 the current language "if the factfinder determines that" was substituted for "if the

judge finds and specifies on the record that." 2005 Minn. Laws ch. 136, art. 16, § 12 at 1118–19.

ing regarding prior out-of-state felony convictions is permissible.

Appellant argues that the Supreme Court's analysis in *Shepard v. United States* should guide this court's analysis. 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). But the *Shepard* court focused on which documents a sentencing court may examine in determining whether a defendant has a prior conviction. *Id.* at 19–26, 125 S.Ct. at 1259–63. Accordingly, we conclude that *Shepard* does not apply to the issue presented here.

But the question before us has been addressed by another appellate court. In *State v. Thomas*, 135 Wash.App. 474, 144 P.3d 1178 (2006), the Washington Court of Appeals held that a sentencing court may determine whether an out-of-state conviction is a felony under Washington law without running afoul of *Blakely*. *Id.* at 1182. The court concluded that limited fact-finding was permissible, as long as the findings were based on admitted or stipulated facts or facts proved beyond a reasonable doubt in another jurisdiction. *Id.* at 1181–82.

The reasoning in *Thomas* is persuasive. Here, appellant does not contend that the district court relied on facts not proven beyond a reasonable doubt. And the jury properly made the determination of whether appellant's offenses established a pattern of criminal conduct, as required by *Adkins*. *See* 706 N.W.2d at 64. We conclude that a sentencing court does not violate a defendant's right to a jury trial when it determines whether out-of-state convictions are felonies under Minnesota law. Accordingly, the district court did not err in determining which of appellant's out-of-state convictions are felonies.

## II.

Appellant argues, and respondent concedes, that the record does not indicate that the state has proved that at least five of appellant's prior convictions are felonies under Minnesota law. We agree.

■ Minn.Stat. § 609.1095, subd. 4 (2006) (the "career-offender statute"), permits a sentencing court to depart from the presumptive guidelines sentence "if ... the offender has five or more prior felony convictions." Out-of-state convictions may count toward the requisite number of felony convictions. Minn.Stat. § 609.1095, subd. 1(b) (2006). The Minnesota Sentencing Guidelines instruct that "the classification of ... felonies should be determined on the basis of current Minnesota offense definitions and sentencing policies." Minn. Sent. Guidelines cmt. II.B.502; *see also State v. Reece*, 625 N.W.2d 822, 825 (Minn. 2001) ("[T]he [sentencing] court must comply with the sentencing guideline's mandate that the court determine how the offender would have been sentenced had the offense occurred in Minnesota at the time of the current offense, not when the offense actually occurred out of state."). The state has the burden of proving by a preponderance of the evidence "the facts necessary to justify consideration of out-of-state convictions in determining a defendant's criminal history score." *State v. Griffin*, 336 N.W.2d 519, 525 (Minn.1983).

■ Here, after the guilty verdict, the jury was asked to determine whether the current offense was committed as part of a pattern of criminal conduct. During that proceeding, the state offered certified copies of appellant's 11 prior convictions. Appellant did not object to their admission. On appeal, appellant argues that he does not have the five felony convictions required for an aggravated sentence under the career-offender statute. Ordinarily, failure to object to evidence at trial waives the issue on appeal. *Van Buren v. State*, 556 N.W.2d 548, 551 (Minn.1996). But

because a sentence based on an incorrect criminal history score is an illegal sentence, "a defendant may not waive review of his criminal history score." *State v. Maurstad,* 733 N.W.2d 141, 147 (Minn. 2007). Thus, this issue is properly before us.

The record indicates that two of appellant's prior convictions are felonies that occurred in Minnesota. And appellant concedes that his two Tennessee convictions for aggravated burglary qualify as felony convictions under Minnesota law. Thus, the issue is whether any of appellant's remaining seven prior convictions can be counted toward the five felony convictions required for enhanced sentencing.

■ Appellant has five out-of-state convictions for burglary of an automobile. It is not clear whether that offense is a felony under Minnesota law. *See* Minn.Stat. § 609.546(2) (2006) (stating that a person who enters a vehicle without the owner's permission is guilty of a misdemeanor). Because the record contains no additional evidence regarding these offenses, we conclude that the state has not proved that these convictions would be felonies under Minnesota law. *See Griffin,* 336 N.W.2d at 525.

■■ In addition, the state has not established that appellant's remaining two convictions of receiving/possessing stolen property and unlawful possession of a weapon can be counted toward the five prior convictions required for enhanced sentencing. The record does not show the value of the stolen property that appellant received or possessed, which is necessary in determining whether the convictions are felonies under Minnesota law. *See* Minn. Stat. § 609.52, subd. 3 (2006). And in Minnesota, the penalty for possession of a firearm by a felon depends on the existence of specific factors that cannot be

determined based on the record here. *See* Minn.Stat. § 624.713, subds. 1, 2 (2006).

Because on this record the state has not proved that at least 5 of appellant's 11 prior convictions are felonies under Minnesota law, we reverse and remand for a determination of whether appellant has the requisite number of prior felony convictions to support an aggravated sentence. The record indicates that appellant did not object to the district court's determination that his out-of-state convictions were felonies. Thus, on remand, respondent is permitted to further develop the sentencing record so that the district court can appropriately make its determination. *See Reece,* 625 N.W.2d at 825–26 (remanding for further examination of appellant's out-of-state offense to determine appropriate number of criminal-history points).

## III.

■ Appellant maintains that the evidence was not sufficient to support his conviction because the only evidence connecting him to the offense is the identifications by Yang and Dittbenner, and those identifications are not credible. We disagree.

■ In considering a claim of insufficient evidence, we will not set a jury's verdict aside unless it is clearly erroneous. *Walker v. State,* 394 N.W.2d 192, 196 (Minn.App.1986), *review denied* (Minn. Nov. 26, 1986). Again, our review is limited to a "painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction," is sufficient to allow the jury to reach the verdict that it did. *Webb,* 440 N.W.2d at 430. We "assum[e] the jury believed the state's witnesses and disbelieved any contradictory evidence." *State v. Parker,* 353 N.W.2d 122, 127 (Minn. 1984). Assessing the credibility of witnesses and weighing witness testimony are

duties within the exclusive province of the jury. *State v. Landa,* 642 N.W.2d 720, 725 (Minn.2002).

■■■■ Appellant argues that the only evidence tying him to the burglary is the two identifications. But Minnesota courts have sustained convictions based on identification by a single witness. *State v. Gluff,* 285 Minn. 148, 150–51, 172 N.W.2d 63, 64–65 (1969); *State v. Walters,* 262 Minn. 26, 28–29, 113 N.W.2d 468, 470–71 (1962); *State v. Taylor,* 427 N.W.2d 1, 3 (Minn. App.1988), *review denied* (Minn. Sept. 28, 1988). Corroboration is required when a single witness's identification of the defendant is made after only "fleeting or limited observation." *State v. Walker,* 310 N.W.2d 89, 90 (Minn.1981).

Appellant relies principally on *State v. Gluff* for his argument that the identifications made by Yang and Dittbenner were not credible. *See* 285 Minn. at 151, 172 N.W.2d at 65. But the identification evidence here is stronger than that in *Gluff.* In *Gluff,* the identifying witness "saw th[e] intruder for only a matter of some 30 seconds before he leveled a revolver at her. Thereafter her attention was riveted on the gun." *Id.* Here, both Yang and Dittbenner had a good opportunity to view the intruder. Yang was two to three feet from the intruder, while Dittbenner was face-to-face with him "for awhile." And even if those opportunities to view the intruder could be characterized as "fleeting" or "limited," Yang and Dittbenner each independently identified appellant as the intruder, in contrast to the single identification of Gluff. Furthermore, appellant has not presented any authority for his assertion that the police officer's techniques in presenting the photographic array to Dittbenner and Yang improperly influenced their identifications. Thus, we conclude that the jury's verdict was supported by sufficient evidence.

## IV.

■■■■ Appellant argues that even if a judicial determination of appellant's prior convictions was proper, the evidence was insufficient to establish a "pattern of criminal conduct." *See* Minn.Stat. § 609.1095, subd. 4. In reviewing a challenge to the sufficiency of the evidence, we are limited to determining whether the evidence was sufficient to support the conclusion reached by the jury. *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). We review the record in the light most favorable to the jury's determination. *State v. Bias,* 419 N.W.2d 480, 484 (Minn.1988).

■■■■ A "pattern of criminal conduct" is established upon "proof of criminal conduct similar, but not identical, in motive, purpose, results, participants, victims or other shared characteristics." *State v. Gorman,* 546 N.W.2d 5, 9 (Minn.1996). Here, the jury could reasonably have concluded that appellant's seven other burglary convictions, and one conviction of attempted burglary, share similar characteristics with this first-degree burglary conviction. Accordingly, we conclude that the evidence was sufficient to support the jury's determination that appellant's prior convictions establish a pattern of criminal conduct.

## V.

Appellant argues that the prosecutor committed misconduct at trial by inflaming the passions and prejudices of the jury, offering his opinion of the evidence, and arguing facts not in evidence. We disagree.

■■■■ A defendant generally waives the right to appellate review of a prosecutor's inappropriate final argument unless he objects or seeks cautionary instructions. *State v. Ives,* 568 N.W.2d 710, 713 (Minn.

1997). This court, however, has the discretion to review unobjected-to prosecutorial misconduct if it amounts to plain error. *State v. Ramey*, 721 N.W.2d 294, 299 (Minn.2006); *see also* Minn. R.Crim. P. 31.02 (providing for review of "[p]lain errors or defects affecting substantial rights" not brought to district court's attention). The plain error analysis asks whether (1) the prosecutor's unobjected-to argument was error; (2) the error was plain; and (3) it affected the defendant's substantial rights. *Ramey*, 721 N.W.2d at 298 (quoting *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998)). "[W]hen prosecutorial misconduct reaches the level of plain or obvious error—conduct the prosecutor should know is improper—the prosecution should bear the burden of demonstrating that its misconduct did not prejudice the defendant's substantial rights." *Ramey*, 721 N.W.2d at 299–300.

■■■■ A prosecutor, as "a minister of justice," has "an affirmative obligation to ensure that a defendant receives a fair trial, no matter how strong the evidence of guilt." *Id.* at 300 (quotation omitted). "The overarching concern regarding prosecutorial misconduct ... is that such misconduct may deny the defendant's right to a fair trial." *Id.* But, when evaluating a claim of prosecutorial misconduct, this court examines the closing argument "as a whole, rather than just selective phrases or remarks that may be taken out of context or given undue prominence." *State v. Walsh*, 495 N.W.2d 602, 607 (Minn.1993).

### Inflaming the passions or prejudices of the jury

■■■■ Appellant argues that the prosecutor's portrayal of Yang and Dittbenner's garage as a "sanctuary" was improper and that the sanctuary references served to inflame the passions and prejudices of the jury. We disagree.

■■■■ A prosecutor's closing argument should be based on the evidence and "should not be calculated to inflame the passions and prejudices of the jury." *State v. Clark*, 296 N.W.2d 359, 371 (Minn. 1980). Arguing facts intended to inflame the jury is considered prosecutorial misconduct. *Ramey*, 721 N.W.2d at 300. But a prosecutor is free to make legitimate arguments on the basis of all proper inferences from the evidence introduced. *State v. Smith*, 541 N.W.2d 584, 589 (Minn.1996). And a prosecutor is not constrained to deliver a "colorless" argument. *State v. Porter*, 526 N.W.2d 359, 363 (Minn.1995).

Here, we conclude that the prosecutor's references to the victims' garage as a sanctuary did not constitute misconduct. First, the mere use of the term "sanctuary" does not constitute language calculated to inflame the passions of the jury. *See The American Heritage College Dictionary* 1228 (4th ed.2007) (defining "sanctuary" as "[a] place of refuge"). And second, because the record shows that Dittbenner spent a great deal of time in his garage, the evidence supports an inference that the garage may have been a sanctuary for him. Accordingly, we conclude that the prosecutor's sanctuary references did not constitute reversible error.

### Offering personal opinions about the evidence and arguing facts not in evidence

■■■■ Appellant also maintains that the prosecutor offered a personal opinion about the evidence by arguing that common sense suggests that the witnesses' identifications were reliable. We disagree.

■■■■ During closing argument, the prosecutor has "the right to present to the jury all legitimate arguments on the evidence, to analyze and explain the evidence, and to present all proper inferences to be drawn therefrom." *State v. Wahlberg*, 296 N.W.2d 408, 419 (Minn.1980). A prosecu-

tor, however, may not personally endorse the credibility of a witness. *State v. Patterson*, 577 N.W.2d 494, 497–98 (Minn. 1998).

■ But appeals to common sense are not personal opinions, and they do not constitute facts not in evidence. Here, in response to appellant's argument that the identifications were flawed because Yang and Dittbenner were under stress, the prosecutor asked [t]he jury to rely on their own experiences with stress and further pointed out that both witnesses independently expressed certainty that appellant was the intruder they found in their garage. We conclude that the prosecutor did not improperly offer a personal opinion about the evidence or argue facts not in evidence.

## VI.

In a pro se supplemental brief, appellant argues that he received ineffective assistance by his attorney. We disagree.

■ To obtain reversal on a claim of ineffective assistance of counsel, appellant must "affirmatively prove [1] that his counsel's representation 'fell below an objective standard of reasonableness' and [2] 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Gates v. State*, 398 N.W.2d 558, 561 (Minn.1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984)) (citation omitted). If one prong is not proved, we need not address the other. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

■ To establish ineffective assistance of counsel, "[t]here must be a showing of actual prejudice, which requires this court to consider the totality of the evidence." *State v. Hood*, 405 N.W.2d 459, 462 (Minn.App.1987), *review denied* (Minn. June 9, 1987). "[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland*, 466 U.S. at 696, 104 S.Ct. at 2069. Ineffective-assistance claims involve mixed questions of law and fact, and are reviewed de novo. *Opsahl v. State*, 677 N.W.2d 414, 420 (Minn.2004).

■ Appellant challenges his counsel's decisions not to object to or present certain evidence. But "[w]hat evidence to present and which witnesses to call at trial are tactical decisions properly left to the discretion of trial counsel." *State v. Mems*, 708 N.W.2d 526, 534 (Minn.2006) (citing *State v. Doppler*, 590 N.W.2d 627, 633 (Minn.1999)).

■ Appellant also claims that his attorney improperly raised racial issues in the trial. Although usually raised on appeal as prosecutorial-misconduct claims, "[r]emarks calculated to evoke bias or prejudice should never be made in a court by anyone, including defense counsel." *ABA Standards for Criminal Justice Prosecution Function and Defense Function* § 4–7.7 at 228 (James G. Exum, Jr., et al. eds., 3d ed.1993). Here, the record does not reveal an attempt by defense counsel to evoke bias or prejudice. During her opening statement, defense counsel stated:

> Again, I would also ask you to keep in mind and not judge [appellant] for anything other than what you hear as evidence. That you not judge him for who he is or what he is called or what you may think about him or any other person of his ethnicity. I ask that you keep an open mind. . . .

And in closing, she said: "And don't throw away [appellant] just because he's different from you, that he may be different from your family or your neighbors." Although the Minnesota Supreme Court has held that it is improper for prosecutors to inject race into a case if race is not relevant, there is no authority for appellant's position that the comments in this case constituted ineffective assistance. *See* *State v. Cabrera,* 700 N.W.2d 469, 473–75 (Minn.2005).

■ Finally, appellant claims that his attorney used inappropriate language towards him during their interactions. But when asked in court why he requested new counsel, appellant did not raise this issue but only complained about his attorney's advice to accept a plea bargain and her alleged failure to thoroughly investigate his case. Moreover, even if appellant's attorney made the outrageous remarks quoted in appellant's pro se brief, appellant has made no showing that there is any connection between the alleged remarks, which occurred only in his presence, and his conviction. Accordingly, we conclude that appellant has not met his burden of proving that he received ineffective assistance of counsel.

## DECISION

We conclude that the evidence was sufficient to support the jury's guilty verdict and that appellant did not receive ineffective assistance of counsel. We further conclude that appellant's right to a jury trial was not violated by the judicial determination that his out-of-state convictions are felonies under Minnesota law and that the jury properly found that appellant's current offense was part of a pattern of criminal conduct. But because on this record the state has not proved that five of appellant's prior convictions should be counted toward the five felony convictions

required for enhanced sentencing, we remand this matter to the district court for resentencing following a further development of the sentencing record.

**Affirmed in part, reversed in part, and remanded.**