*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0717**

State of Minnesota,
Respondent,

vs.

Furman Street,
Appellant.

**Filed May 6, 2024**
**Affirmed in part, reversed in part, and remanded**
**Cochran, Judge**

Nobles County District Court
File No. 53-CR-22-594

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Braden M. Hoefert, Nobles County Attorney, Worthington, Minnesota; and

Travis J. Smith, Special Assistant County Attorney, Slayton, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leah C. Graf, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cochran, Presiding Judge; Johnson, Judge; and

Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

In this appeal from a final judgment of conviction for felony driving while impaired (DWI), appellant argues that the district court abused its discretion by denying his motion for a downward dispositional departure. Alternatively, appellant contends that the district court abused its discretion by sentencing him based on a criminal-history score that included unsubstantiated out-of-state convictions. For the reasons set forth below, we affirm the district court's denial of appellant's motion for a downward dispositional departure. But we reverse appellant's sentence based on the inclusion of the out-of-state convictions and remand for resentencing. We therefore affirm in part, reverse in part, and remand.

**FACTS**

On June 16, 2022, respondent State of Minnesota charged appellant Furman Street with felony DWI in violation of Minnesota Statutes section 169A.20, subdivision 1(7) (2020); felony fleeing a peace officer in a motor vehicle in violation of Minnesota Statutes section 609.487, subdivision 3 (2020); and misdemeanor driving in violation of a restricted license in violation of Minnesota Statutes section 171.09, subdivision 1(g) (2020). Street pleaded guilty to felony DWI without an agreement as to sentencing but with the understanding that the state would drop the remaining charges and would agree that Street could be released to inpatient treatment pending sentencing. The state dropped the remaining charges and the district court released Street to inpatient treatment with several

conditions, including that he abstain from using drugs and alcohol. The district court also ordered a presentence investigation report (PSI) and scheduled the matter for sentencing.

Before sentencing, Street moved for a downward dispositional departure, arguing that he is particularly amenable to probation. Following a motion hearing, the district court continued sentencing to allow Street to explore his eligibility for veteran's court.

The parties returned for sentencing on March 1, 2023. Before commencing the sentencing hearing, the district court requested that the bailiffs have Street provide a urine sample to test for drugs. Street admitted to the bailiffs that he had recently used marijuana. He also told them that he was unable to provide a urine sample. At the start of the sentencing hearing, Street admitted the same to the district court. After the district court confirmed that Street was competent to proceed notwithstanding his recent substance use, the district court heard the parties' arguments on Street's motion for a downward dispositional departure.

Defense counsel asked the district court to grant Street's motion for a downward dispositional departure, arguing that Street is particularly amenable to probation. Defense counsel emphasized that, while awaiting sentencing, Street had completed an in-patient drug-treatment program and had "graduated" from a sober halfway house without "any problems." Defense counsel noted that Street "feels hopeful about what he has learned in treatment." Defense counsel also explained that Street was currently living with his brother, who was "a sober individual and runs a sober household"; that Street was attending outpatient treatment; and that Street had been provisionally accepted to veteran's court,

3

pending the district court's approval. Finally, defense counsel noted that Street was not "particularly suitable to a prison setting" due to several "medical issues."

The state opposed Street's motion. The state argued that Street was not particularly amenable to probation because he had committed the offense at issue (felony DWI) while on probation for another offense (criminal vehicular operation) that was "based on alcohol use." The state asserted that "somebody cannot be particularly amenable to probation if they pick up almost an identical offense while they are on probation in the first place." In the state's view, Street continues to present a public safety risk. The state also asserted that Street had not taken accountability for his substance use, as evidenced by his use of marijuana while awaiting sentencing.

Street spoke on his own behalf. Street thanked the district court for allowing him to "check into the veteran's court" and stated that he felt the program would be a "positive move" for him. Street admitted that he "made a major mistake" by smoking marijuana but emphasized that he "admitted [his] fault," despite the potential consequences.

The district court determined that Street was not particularly amenable to probation and denied his motion for a downward dispositional departure. The district court explained:

> DISTRICT COURT: [A]t our last hearing . . . you knew you were on felony probation.
>
> STREET: Yes, ma'am.
>
> DISTRICT COURT: You knew you were on conditions of release.
>
> STREET: Yes, ma'am.

DISTRICT COURT: You knew both required that you not use. You had had the inpatient treatment. You had had the halfway house treatment and long term halfway house experience. And you had transitioned to your brother's home that was sober. That's the same plan you're giving me today with the addition of veteran's court. And my concern is [] that with all of that hanging over your head, you still unfortunately gave in to impulse, gave in to old habits, and used a controlled substance.

And in light of that I can't make a particularly amenable finding. I don't have the evidence anymore. And it's based on that choice that day. And, unfortunately, like I said your actions are speaking louder than your words. I believe your words. I know what you want. But the foundation to support them you took it away. And I can't make the findings.

The district court sentenced Street to 57 months in prison, which represented a bottom-of-the-box presumptive sentence based on Street's criminal history score of five. According to the PSI, the score of five included one custody-status point and four felony points. The PSI assigned three felony points for convictions that allegedly occurred in the state of Georgia. The fourth felony point was for Street's 2019 Minnesota conviction of criminal vehicular operation with an alcohol concentration of 0.08 or more. The PSI identified each Georgia conviction by case number, date of conviction, and sentence, and included a description, date, and location for each convicted offense. The PSI did not include, and the state did not offer, any evidence to substantiate these out-of-state convictions. At sentencing, Street did not object to his criminal-history score.

Street appeals.

**DECISION**

Street argues the district court abused its discretion by denying his motion for a downward dispositional departure. Alternatively, Street contends that the district court abused its discretion by sentencing him based on a criminal-history score that included certain out-of-state convictions. We consider each issue in turn.

**I. The district court did not abuse its discretion by denying Street's motion for a downward dispositional departure.**

The Minnesota Sentencing Guidelines establish presumptive sentences for felony offenses. Minn. Sent'g Guidelines 2.C (2020). The guidelines seek to "maintain uniformity, proportionality, rationality, and predictability in sentencing." Minn. Stat. § 244.09, subd. 5 (2022). "Consequently, departures from the guidelines are discouraged and are intended to apply to a small number of cases." *State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016).

A district court may depart from a presumptive sentence only if there are "identifiable, substantial, and compelling circumstances to support a departure." Minn. Sent'g Guidelines 2.D.1 (2020). One circumstance that may justify a departure is the defendant's particular amenability to probation. Minn. Sent'g Guidelines 2.D.3.a(7) (2020); *see also State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). When assessing whether a defendant is particularly amenable to probation, district courts consider "[n]umerous factors," such as "the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family." *Trog*, 323 N.W.2d at 31. But even if a mitigating factor is present in a particular case, a district court is not obligated

6

to depart from a presumptive sentence. *State v. Pegel*, 795 N.W.2d 251, 253-54 (Minn. App. 2011). Likewise, although a district court must provide reasons for departing from a presumptive sentence, "an explanation is not required when the court considers reasons for departure but elects to impose the presumptive sentence." *State v. Van Ruler*, 378 N.W.2d 77, 80 (Minn. App. 1985).

We apply an abuse-of-discretion standard of review to a district court's denial of a defendant's motion for a downward departure. *Pegel*, 795 N.W.2d at 253. "Presumptive sentences are seldom overturned." *State v. Delk*, 781 N.W.2d 426, 428 (Minn. App. 2010) (quotation omitted), *rev. denied* (Minn. July 20, 2010). We "will reverse the district court's refusal to depart from a presumptive sentence only in a 'rare' case." *State v. Musse*, 981 N.W.2d 216, 220 (Minn. App. 2022) (quoting *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981)), *rev. denied* (Minn. Dec. 28, 2022).

Street argues that the district court abused its discretion by denying his motion for a downward dispositional departure because the record reflects that he is particularly amenable to probation. In support of his argument, he asserts that "each *Trog* factor supports his amenability." He notes "the vast majority of his criminal history stems from events that occurred more than a decade ago"; he was in poor health and over the age of 50 at the time of sentencing; he had a "remorseful, cooperative, and appropriate attitude throughout the case"; and he has "the support of his friends and family, including new friends he had connected with through treatment." Street contends that the district court abused its discretion by failing to consider these mitigating factors and by basing its

7

decision to deny Street's motion for a downward dispositional departure "solely on his admission to a one-time use of [marijuana] before sentencing." We are not persuaded.

We conclude that the district court did not abuse its broad discretion by denying Street's motion for a downward dispositional departure. As the state correctly notes, Street committed the offense in this case—felony DWI—while on probation for a different but similar offense—felony criminal vehicular operation. Additionally, while awaiting sentencing and after extensive drug treatment, Street violated the conditions of his probation and the terms of his release by smoking marijuana. This evidence alone supports the district court's finding that Street "gave in to old habits" and therefore was not particularly amenable to treatment or probation. *See State v. Soto*, 855 N.W.2d 303, 309 (Minn. 2014) (explaining that "'particularly' means 'especially' or 'specifically'" and that "requiring a defendant to be *particularly* amenable to probation . . . ensure[s] that the defendant's amenability to probation distinguishes the defendant from most others and truly presents the substantial and compelling circumstances that are necessary to justify a departure" (quotation omitted)). Accordingly, this is not the "rare case" requiring reversal of a district court's refusal to depart from a presumptive sentence. *See Musse*, 981 N.W.2d at 220 (quotation omitted).

To the extent that Street argues that the district court abused its discretion by failing to expressly consider *Trog* factors that militate in favor of a departure, this argument is unavailing. As discussed above, a district court is not required to depart from a presumptive sentence even if mitigating factors are present. *Pegel*, 795 N.W.2d at 253-54. Likewise, a district court is not required to explain its decision to deny a sentencing

8

departure and impose a presumptive sentence. *Van Ruler*, 378 N.W.2d at 80. Thus, any failure by the district court to expressly consider factors supporting a departure is not grounds for reversal. *See Pegel*, 795 N.W.2d at 253-54; *Van Ruler*, 378 N.W.2d at 80.

## II. The district court abused its discretion by sentencing Street based on a criminal-history score that included unsubstantiated out-of-state convictions.

Street contends that the district court abused its discretion by sentencing him with a criminal-history score that included unsubstantiated out-of-state convictions. We will not reverse a district court's determination of a defendant's criminal-history score "absent an abuse of discretion." *State v. Maley*, 714 N.W.2d 708, 711 (Minn. App. 2006). But the interpretation of the sentencing guidelines presents a legal issue, which we review de novo. *State v. Scovel*, 916 N.W.2d 550, 554 (Minn. 2018).

"Minnesota's Sentencing Guidelines provide uniform standards for the inclusion and weighting of criminal history information that are intended to increase the fairness and equity in determining a defendant's criminal-history score." *Maley*, 714 N.W.2d at 711 (quotation omitted). An offender's criminal-history score is the sum of points from eligible prior adult felonies, prior juvenile adjudications, and prior misdemeanors and gross misdemeanors, as well as the offender's custody status at the time of the offense. Minn. Sent'g Guidelines 2.B.1-7 (2020). An offender's criminal-history score may include out-of-state convictions if certain requirements are met. *See* Minn. Sent'g Guidelines 2.B.5.

The guidelines provide that an out-of-state conviction "may be counted as a felony only if [the offense] would both be defined as a felony in Minnesota, and the offender received a sentence that in Minnesota would be a felony-level sentence, which includes the

9

equivalent of a stay of imposition." Minn. Sent'g Guidelines 2.B.5.b (2020) (emphasis omitted). In assigning weight to an out-of-state offense, "[s]ection 2.B.1 governs the weight of a prior felony conviction from a jurisdiction other than Minnesota, and [the weight] must be based on the severity level of the equivalent Minnesota felony offense." Minn. Sent'g Guidelines, 2.B.5.c (2020).

"The state has the burden of proving by a preponderance of the evidence the facts necessary to justify consideration of out-of-state convictions in determining a defendant's criminal history score." *State v. Outlaw*, 748 N.W.2d 349, 355 (Minn. App. 2008) (quotation omitted), *rev. denied* (Minn. July 15, 2008). "[T]he district court may not use out-of-state convictions to calculate a defendant's criminal-history score unless the state lays foundation for the court to do so." *Maley*, 714 N.W.2d at 711.

Although the state need not present certified copies of out-of-state convictions for the convictions to be included in a defendant's criminal-history score, the state must provide "persuasive evidence that sufficiently substitutes for the official, certified record of conviction." *Id.* at 711-12. If the state fails to meet its burden, the proper remedy is to reverse and remand for resentencing. *See id.* at 715. But if the defendant fails to object to his criminal-history score at sentencing, the state may "further develop the sentencing record" on remand to allow the district court to determine whether the relevant out-of-state convictions were properly included in the defendant's criminal-history score. *Outlaw*, 748 N.W.2d at 356; *see also State v. Strobel*, 921 N.W.2d 563, 577 (Minn. App. 2018), *aff'd*, 932 N.W.2d 303 (Minn. 2019).

10

Street contends that the district court erred by sentencing him based on a criminal-history score of five that included felony points for three alleged Georgia convictions because the state failed to establish by a fair preponderance of the evidence that these convictions were valid and that the underlying offenses would constitute felonies in Minnesota. We agree.

The record shows that the state failed to meet its burden of proving that the three alleged Georgia convictions were valid and would constitute felonies under Minnesota law. *See Maley*, 714 N.W.2d at 711. As Street correctly notes, the state did not present any evidence to support Street's alleged Georgia convictions, nor did the PSI include any documentation to verify them. Accordingly, the state failed to present "persuasive evidence" that these convictions were properly included in Street's criminal-history score. *See id.* at 710-12 (concluding that the state's reliance on a sentencing worksheet alone was insufficient to substantiate the defendant's out-of-state convictions); *see also State v. Griffin*, 336 N.W.2d 519, 525 (Minn. 1983) (concluding that the state met its burden of proof by providing the district court with "considerable documentation" of the defendant's out-of-state conviction). We therefore conclude that the district court abused its discretion by sentencing Street based on a criminal-history score that included unsubstantiated out-of-state convictions, and we reverse and remand for resentencing. *See Maley*, 714 N.W.2d at 711, 715. Because Street did not object to his criminal-history score at sentencing, the state may supplement the sentencing record on remand. *See Outlaw*, 748 N.W.2d at 356.

**Affirmed in part, reversed in part, and remanded.**

11