**STATE of Minnesota, Respondent,**

v.

**Shane Scott STONE, Appellant.**

No. A08–769.

Supreme Court of Minnesota.

June 30, 2010.

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN; and Timothy R. Faver, Beltrami County Attorney, Bemidji, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Benjamin J. Butler, Assistant State Public Defender, St. Paul, MN, for appellant.

## OPINION

ANDERSON, G. BARRY, Justice.

Appellant Shane Scott Stone was indicted in Cass County District Court for one count of first-degree burglary under Minn. Stat. § 609.582, subd. 1(c) (2008), and one count of aiding and abetting first-degree aggravated robbery in violation of Minn. Stat. § 609.245, subd. 1 (2008), and Minn. Stat. § 609.05 (2008). The State alleged that Stone aided and abetted Maynard Goodbear in robbing D.B. A Cass County jury acquitted Stone of the burglary charge, but found him guilty of aiding and abetting first-degree aggravated robbery. He was sentenced to 108 months of imprisonment, and the court of appeals affirmed the conviction. We granted Stone's petition for further review, and we now affirm.

D.B. lives in a house with A.J., his long-time girlfriend, their two minor children, and A.J.'s father, G.J. Shortly after midnight on April 23, 2007, D.B. heard loud knocking on the door of his house, followed by a request to use the telephone. In response, D.B. yelled that there was no telephone in the house, but the pounding increased and the door to the house began to give way. D.B. ran to wake G.J. while A.J. struggled to hold the door closed. When D.B. and G.J. returned, two shots were fired into the house; one shot struck G.J.

Immediately afterwards, the door caved in and two men entered the home. One man carried a gun and wore a bandana that covered his face, while the other, unmasked, man wore a stocking cap and carried a small, portable taser. The armed and masked man yelled at D.B. to

"give it up." The unmasked man stood in the hallway with A.J. and G.J. A.J. then went into her bedroom and called the police. Meanwhile, the masked man led D.B. outside to D.B.'s car at gunpoint, where D.B. retrieved $450 in cash from the glove compartment. The masked man demanded more money from D.B., but D.B. turned out his pockets to show that he did not have any more money. The unmasked man also came outside and demanded that D.B. give them more money. When D.B. repeated that he did not have any more, the unmasked man shot him with the taser and the two men ran off into the woods.

When the police arrived in response to A.J.'s call, D.B. and A.J. identified the unmasked man, who they both knew by name, as Shane Scott Stone. G.J. made an audio-recorded statement to police, during which he described the details of the night's events. G.J. said in his statement that he got a good look at the unmasked man and provided a description that matched D.B.'s and A.J.'s identification of Stone. Approximately four hours later, the police discovered Stone hiding in underbrush less than one mile away from the home of D.B. and A.J. Within roughly one week, D.B., A.J., and G.J. identified Stone's picture in separate photo line-ups. Stone was charged with first-degree burglary in violation of Minn.Stat. § 609.582, subd. 1(c) (2008), and aiding and abetting first-degree aggravated robbery in violation of Minn.Stat. § 609.245, subd. 1 (2008), and Minn.Stat. § 609.05 (2008). Stone pleaded not guilty to both charges.

D.B., A.J., and G.J. testified at Stone's jury trial. Both D.B. and A.J. again identified Stone as the unmasked intruder. G.J. described where he was when the banging on the door first began, when he came to the living room, what he did in the living room, how and when he was shot, and the actions he took after he was shot.

G.J., however, was unable to recognize Stone in court. G.J. provided a detailed description of the intruder, but when asked if he got a good look at the unmasked intruder's face, he said, "No, he just appeared briefly and left." When asked about whether he had identified someone during a photo line-up, G.J. initially stated that he had not. But, G.J. recalled picking out a photograph after his memory was refreshed by looking at a document that he saw during the photo line-up. After G.J. testified that he did not get a good look at the assailant, the State attempted to refresh G.J.'s recollection by showing G.J. statements that he made during his police interview. The State subsequently asked G.J. if reviewing the statements refreshed his recollection as to whether G.J. had gotten a good look at the face of the unmasked man, to which G.J. responded, "I can't say for sure right now."

G.J. also had difficulty remembering details of the physical description of the unmasked intruder that he provided to the police, even after he was shown portions of a transcript of his audio-recorded statement. Following defense cross-examination, the State asked G.J. if he felt he had "sufficient recollection to testify fully and accurately about what happened that night" to which G.J. responded, "That's all I remember right now." G.J. agreed, however, that his audio-recorded statement to the police was "an accurate reproduction of the questions [that he was] asked and the answers that [he gave]." Over defense objection, the district court allowed the State to play the original audio recording of G.J.'s police interview as a recorded recollection under Minn. R. Evid. 803(5). The court relied on testimony about G.J.'s alcoholism, the State's failed attempts to refresh his recollection, and G.J.'s testimony that he had an insufficient recollection of the events.

After an initial deadlock, the jury acquitted Stone of burglary but found him guilty of aiding and abetting first-degree aggravated robbery. Stone raised five issues before the court of appeals: (1) whether the district court abused its discretion by admitting the contents of the audio recording of G.J.'s police interview as a recorded recollection under Minn. R. Evid. 803(5); (2) whether the district court abused its discretion by permitting the State to impeach Stone with evidence of his prior convictions; (3) whether the district court abused its discretion by not granting a continuance to allow Stone to locate a witness; (4) whether Stone preserved his claim that evidence about motorcycle use was improperly admitted; and (5) whether the evidence was sufficient to support Stone's conviction. *State v. Stone*, 767 N.W.2d 735, 738–39 (Minn.App.2009).

The court of appeals affirmed the district court's rulings on all issues. *Id.* at 745. Regarding G.J.'s recorded police interview, the court of appeals held that: (1) Minn. R. Evid. 803(5) permits the introduction of a recorded recollection to supplement incomplete memory, and (2) the recorded recollection accurately or correctly reflected G.J.'s prior knowledge. *Stone*, 767 N.W.2d at 740–41. We granted Stone's petition for further review of whether the district court erred in admitting the contents of G.J.'s audio-recorded statement as a recorded recollection.

## I.

■ Evidentiary rulings rest within the sound discretion of the district court and we will not disturb those rulings on appeal absent a clear abuse of that discretion. *State v. Jackson*, 770 N.W.2d 470, 482 (Minn.2009). Even where the district court abuses its discretion, the court's evidentiary ruling will not be reversed unless the error substantially influenced the jury's verdict. *State v. Nunn*, 561 N.W.2d 902, 907 (Minn.1997). But the question of whether the district court properly interpreted Minn. R. Evid. 803(5) is a question of law that we review de novo. *See Commandeur LLC v. Howard Hartry, Inc.*, 724 N.W.2d 508, 510 (Minn.2006).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Minn. R. Evid. 801(c). Hearsay statements may be either oral or written. Minn. R. Evid. 801(a). Hearsay is inadmissible unless it falls within an exception to the hearsay rule. Minn. R. Evid. 802. The State does not dispute that the audio-recorded statement was hearsay. Instead, the State argues that the district court properly admitted the contents of the audio recording under the recorded recollection hearsay exception of Minn. R. Evid. 803(5). That rule defines a recorded recollection as

> [a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Minn. R. Evid. 803(5).

■ When interpreting the Minnesota Rules of Evidence, we first look to the plain language of the rule. *See State v. Hurd*, 763 N.W.2d 17, 35 (Minn.2009). Admission of the contents of G.J.'s audio-recorded statement to the police as a recorded recollection under Rule 803(5) therefore requires that: (1) the recording constitutes a "memorandum or record";

(2) G.J. had "insufficient recollection to testify fully and accurately"; and (3) the statement is "shown to have been made or adopted by the witness when the matter was fresh in the witness' memory."[1] Minn. R. Evid. 803(5). We address each of these requirements in turn.

## II.

Stone first argues that G.J.'s audio-recorded statement is not a "memorandum or record" because the plain language of Rule 803(5) only encompasses written documents. The State argues that Stone has waived consideration of this issue because he did not raise it in the district court, court of appeals, or petition for review to this court. *See State v. Wellman*, 341 N.W.2d 561, 564 (Minn.1983) (citing the general rule that objections to evidence not raised below are forfeited on appeal). Stone did not ask the district court to exclude the audio-recorded statement on the ground that it is not a "memorandum or record." Stone instead argued that the audio-recorded statement was inadmissible under Rule 803(5) based on only the latter two requirements—that the witness have an insufficient recollection to testify fully and accurately, and that the memorandum or record was made or adopted by the witness. *See Stone*, 767 N.W.2d at 739–41. Because we do not believe that "proper steps have been taken to preserve [the] issue[ ] for review on appeal," Minn. R. Civ.App. P. 103.04, we decline to address the "memorandum or record" issue.

## III.

■■ Stone next argues that the State failed to prove that G.J. had an insufficient recollection to testify fully and accurately at trial because G.J. recalled several details of the crime when he testified and he never claimed to be unable to recall the events surrounding the robbery. Stone further asserts that Minn. R. Evid. 803(5) was not intended to turn prior inconsistent statements into substantive evidence.

A memorandum or record can only qualify as a recorded recollection if, upon a witness's use of "a writing to refresh memory for the purpose of testifying," Minn. R. Evid. 612, a witness has an "insufficient recollection to testify fully and accurately." *See* Minn. R. Evid. 803(5). We have not previously addressed the precise question of whether the contents of a memorandum or record of a witness who has *some* memory of a prior event can be admitted under the rule. But the advisory committee comment to Rule 803(5) clarifies that "[t]he rule does not require a total lack of memory" for admissibility. Minn. R. Evid. 803(5) cmt. (1989). Instead, "[i]f the present recollection of the witness is impaired to such an extent that he is unable to testify *fully* and accurately, he may resort to a memorandum or record if it satisfied the other provisions of the rule." *Id.* (emphasis added).

Here, the court of appeals held that Minn. R. Evid. 803(5) "does not require that a witness realize and claim that his recollection is insufficient; [the rule] requires that a witness 'has insufficient recollection to testify fully and accurately.'" *Stone*, 767 N.W.2d at 739 (quoting Minn. R. Evid. 803(5)). Therefore, the court concluded that because G.J. could not remember critical details of the robbery in his trial testimony, the district court did not abuse its discretion in concluding that G.J. had an insufficient recollection to testify fully and accurately about the robbery. *Id.* at 739–40.

---

**1.** Stone did not raise the issue of whether the audio recording "reflect[ed] [G.J.'s] knowledge correctly" in the district court. Therefore, that issue is not before us.

The plain language of Minn. R. Evid. 803(5) requires an insufficient recollection to testify *"fully* and accurately," but does not require the witness to have a total absence of memory of the event about which he is testifying. *See* Minn. R. Evid. 803(5) (emphasis added). The cases that Stone cites to suggest that total lack of memory is a prerequisite to admission of a recorded statement under Rule 803(5) focus instead on whether the prosecution carried its burden to show that the memory of the witness was insufficient, not on whether the witness could recall *any* details of the event at issue.[2]

Several other courts have reached this result. For example, in *United States v. Senak,* 527 F.2d 129, 138 (7th Cir.1975), the Seventh Circuit clarified that a witness does not have to entirely lack present recollection of events for evidence to be admitted as a recorded recollection. Specifically, the defendant argued that a particular witness's statement was inadmissible because the witness had "testified to practically everything that is in the statement." *Id.* But the Seventh Circuit determined that "there was sufficient *additional* incriminatory information in the statement that we could scarcely say that it did not add to the Government's case." *Id.* (emphasis added). The court therefore held that the district court did not abuse its discretion in admitting the contents of the statement as a recorded recollection. *Id.*

Similarly, the Sixth Circuit in *United States v. Williams* affirmed the district court's admission of a witness statement where the defendant argued "that it was error to admit a statement when the witness had clear recollection of his conversations with defendant." 571 F.2d 344, 349 (6th Cir.1978) (internal quotation marks omitted). In rejecting this argument, the Sixth Circuit stated:

> There is no doubt that [the witness] had sufficient recollection to testify generally about his conversations with [the defendant]. However, the critical question about those conversations was whether [the defendant] had told him how the checks came into his possession. This was the very aspect of the conversations which [the witness] testified he could not recall.

*Id.* The witness's testimony was therefore "incomplete because of his insufficient recollection." *Id.* The court focused on the importance of the missing testimony, rather than on the overall number of details that the witness could recall. *See id.; see also United States v. Sollars,* 979 F.2d 1294, 1298 (8th Cir.1992) (holding that a tape-recorded statement was properly played for the jury, where the witness could not testify about one aspect of the crime she had previously observed, but recalled other details).

2. *See, e.g., United States v. Dazey,* 403 F.3d 1147, 1166 (10th Cir.2005) (holding that admission of a witnesses' notes was error, where the government conceded that "neither the prosecutor nor the court specifically asked the witnesses whether their memory was sufficient to testify fully without the notes" but argued that lack of memory was implied); *Rush v. Ill. Cent. R.R. Co.,* 399 F.3d 705, 719 (6th Cir.2005) (holding that admission of a witness's statement was error, where the party offering the statement failed to establish that the witness's memory was insufficient without being shown the statement); *United States v. Felix–Jerez,* 667 F.2d 1297, 1302 (9th Cir.1982) (concluding that the memorandum "may have qualified as a hearsay exception ... [but] there was no showing that the witness had insufficient recollection to enable him to testify fully and accurately at trial."). Stone's argument is unavailing here because the State's attempts to refresh G.J.'s recollection failed, and the State thereafter established that G.J. could not recall details about his previous identification and description of Stone.

Although G.J. was able to recall much of what happened during the crime, there were several details, including critical details about his identification and description of Stone, that he could not provide to the jury when he testified. G.J. testified that he did not get a good look at the unmasked man's face and testified that he was unable to pick out the unmasked man's photograph in the photo line-up. But in his audio-recorded statement to the police taken shortly after the crime, G.J. stated that he *did* get a good look at the unmasked man's face.

The State successfully refreshed G.J.'s recollection about picking out Stone's photo during the line-up. But the State was unable to refresh G.J.'s recollection on details of the unmasked man's identity. Although G.J. did not have a wholly deficient memory while testifying, there were sufficiently important details that G.J. had previously supplied in his audio-recorded statement that he could not recall. His recollection was therefore "insufficient." *See, e.g., Senak,* 527 F.2d at 138.

Additionally, as the State argues, G.J.'s statement was not a prior inconsistent statement disguised as a recorded recollection. When the State attempted to refresh G.J.'s recollection, he testified that he could not say for sure whether he had gotten a good look at the unmasked intruder. G.J. also testified that his recorded statement more accurately reflected what he perceived and experienced that night than his in-court testimony. The fact that G.J. responded "[t]hat's all I remember right now" in response to the State's question of whether he had an insufficient recollection does not suggest that he had a sufficient memory to testify. To the contrary, G.J.'s response suggests that he could not more "fully and accurately" remember all the details of the event he had previously described to the police.

We hold that the district court did not abuse its discretion in concluding that G.J. had an insufficient recollection for purposes of Minn. R. Evid. 803(5).

## IV.

Finally, Stone argues that G.J. had not "made or adopted" the audio recording because a police officer recorded G.J.'s statement and the State failed to show that G.J. adopted the audio recording when it was fresh in his memory. Minnesota Rule of Evidence 803(5) requires G.J. to have either "made" the audio recording or "adopted" the audio recording when the matter was fresh in his memory.

We have not previously addressed the requirement that an audio recording be "made or adopted by the witness when the matter was fresh in the witness' memory[.]" Minn. R. Evid. 803(5). We have, however, addressed this requirement in cases involving written documents. Where the document is handwritten and signed by the witness, there is no question that the witness has "made or adopted" the statement. Cases involving a second person transcribing the statement are more difficult, and more relevant here. In *Walker v. Larson,* a witness gave a statement to police one day after the motor vehicle accident at issue occurred. 284 Minn. 99, 104, 169 N.W.2d 737, 741 (1969). A police stenographer transcribed the statement, and the witness then reviewed the statement, initialed the first page, and signed at the end of the statement. *Id.* at 101, 169 N.W.2d at 739. Regarding records written and signed by a witness, we said, "when the writing is one written or signed by the witness who observed the facts recorded ... it is acceptable if he states that he is satisfied that it is correct because he recognizes the handwriting or signature as his own, and believes that he would not have writ-

ten or signed it unless it were true." *Id.* at 1005–06, 169 N.W.2d at 742 (internal quotation marks omitted). *See also Parker v. Reda,* 327 F.3d 211, 213–14 (2d Cir.2003) (holding that the requirements of the past-recollection-recorded hearsay exception were satisfied because the witness testified that he prepared the memorandum, recalled writing it, stated that he believed it to reflect his knowledge, and also had signed and dated the memorandum); *cf. United States v. Schoenborn,* 4 F.3d 1424, 1427 (7th Cir.1993) ("[I]t is clear from the testimony ... that [the witness] did not adopt the agent's report as his own.... he did not tell [the agent] the report was accurate and had refused to sign it for that reason.").

██ Commentators have also addressed the "made or adopted" standard in the context of written transcriptions of witness statements:

> This situation commonly arises when a person perceives an event and reports it to another who records it. Both participants must ordinarily testify, with the witness vouching for the accuracy of the oral report and with the recorder vouching for the accuracy of the transcription.... So long as accuracy is vouched for by each participant in the chain, a memorandum compiled through the efforts of more than two persons may be admitted.

5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 803.07, at 54–54.1 (Matthew Bender 2d ed.2009). This scenario presumes that a witness has not "made" the record, and therefore, he or she must have "adopted" it for the contents of the record to become admissible. *See* Minn. R. Evid. 803(5). Essentially, "if [the declarant] dictates the record to a stenographer, the stenographer need not testify if the recorder states that the memorandum accurately repro-

duces the dictation." 5 Weinstein, *supra,* at 54.1. The conclusion that the memorandum accurately reproduces the dictation requires the declarant to have reviewed what was dictated to the stenographer to thereby adopt the memorandum.

The issue here is similar, but more complicated because the statement G.J. gave to the police officers is in audio-recorded form. In this situation, there were two parties present—the witness, who made the statement, and a police officer, who took the necessary mechanical steps to record the statement. We have not squarely addressed the issue presented here.

In *State v. Zeimet,* we stated that witnesses' tape-recorded statements to police were admissible as recorded recollections. 348 N.W.2d 338, 340–41 (Minn.1984). We explained that the district court properly admitted statements to the police regarding the arson at issue because

> [b]oth witnesses gave their prior statements when they had personal knowledge of defendant's admissions; the statements were contemporaneously and accurately recorded; both witnesses lacked sufficient present recollection at the retrial to testify fully and accurately about the subject matter; and both witnesses testified that they were being truthful when they made the statements that were recorded.

*Id.* at 341. But we did not discuss the requirements of Rule 803(5) in detail. *See id.* at 341.

The State argues that we implicitly held in *State v. Ortlepp* that a person who provides an audio-recorded statement to the police is the person who made the record for purposes of Rule 803(5). *See* 363 N.W.2d 39, 44 (Minn.1985) ("[S]ince [the witness] admitted making the prior statement, there was no real dispute over

whether he made it or over what it contained. Indeed, the prior statement was taped."). But in *Ortlepp*, the statement was ultimately admitted under the residual hearsay exception rather than Rule 803(5). 363 N.W.2d at 44; *see also* Minn. R. Evid. 807 (residual hearsay exception). *Ortlepp* thus is not dispositive here.

Further complicating matters, the court of appeals has previously concluded that the contents of a witness's videotaped interview with a police investigator could not be admitted under Minn. R. Evid. 803(5) because the witness "did not make the record, but merely responded to questions of the investigator." *State v. Koerner*, No. C3–96–329, 1996 WL 636185, at *4 n. 3 (Minn.App. Nov.5, 1996), *rev. denied*, (Minn. Dec. 17, 1996). The court of appeals held that the witness's videotaped interview with police could be admitted under the residual hearsay exception. *Id.* at *4. Based on the analysis in *Koerner*, it is unclear whether the court concluded that the witness had not "made" the record because: (1) he did not personally record it; or (2) he was not the sole participant in the creation of the record.

Other jurisdictions applying identical or very similar recorded-recollection hearsay exceptions have generally held that an audio recording of a statement to police was "made" by the witness for purposes of Rule 803(5). In *Montano v. State*, 846 So.2d 677 (Fla.Dist.Ct.App.2003), the Florida district court of appeal was left to determine whether a witness who gave an audio-recorded statement to the police after an incident had "made or adopted" the recording for purposes of Florida's recorded-recollection hearsay exception, Fla. Stat. § 90.803(5) (2009). The court held that the recording was "made or adopted" because "[t]he hearsay exception is concerned with the accuracy of the statement as a rendition of earlier events, not with

who manipulated the machine to create the recording." *Montano*, 846 So.2d at 681.

Similarly, in *State v. Alvarado*, 89 Wash.App. 543, 949 P.2d 831, 833–34 (1998), the Washington Court of Appeals analyzed the "made or adopted" standard where an eyewitness to a first-degree murder made three tape-recorded statements. The court held that the district court did not abuse its discretion in admitting the recordings because they satisfied the elements of Wash. R. Evid. 803(a)(5), including the requirement that the statement be "made or adopted by the witness." *Alvarado*, 949 P.2d at 835. The court concluded that the recordings were "taped statements made within eight days of the murder. Their content establishes that [the witness] had knowledge of the events when the recordings were made.... The recordings are [the witness's] own words and thus were made and adopted by him." *Id.*

In *State v. Alatorre*, 191 Ariz. 208, 953 P.2d 1261, 1263 (Ariz.App.1998), the Arizona Supreme Court addressed the "made or adopted" standard in the child sexual abuse context. A police detective conducted a tape-recorded interview of the victim about the alleged sexual abuse, and the police detective later testified extensively from a transcript he prepared of the interview. *Id.* The court noted that "multiparty recorded recollections" were common and now generally accepted. *Id.* at 1264. The court also relied on the Maine Supreme Court's decision in *State v. Discher*, 597 A.2d 1336 (Me.1991). *Alatorre*, 953 P.2d at 1264. The Maine court concluded in *Discher* that the tape recording "contained the indicia of trustworthiness required by Rule 803(5)." 597 A.2d at 1342. The Arizona court in *Alatorre* also cited with approval the Seventh Circuit decision in *United States v. Williams*, 951 F.2d 853 (7th Cir.1992), which articu-

lated a general rule for multi-party statements:

> Where a person perceives an event and reports it to another person who records the statement, both must ordinarily testify to establish that the statement is a past recollection recorded under Rule 803(5). The person who witnessed the event must testify to the accuracy of his oral report to the person who recorded the statement. The recorder must also testify to the accuracy of his transcription.

*Alatorre*, 953 P.2d at 1264 (citing *Williams*, 951 F.2d at 858). *See also United States v. Booz*, 451 F.2d 719, 725 (3d Cir.1971) ("Some courts and textwriters have taken the view that where as here, a record is the joint product of two individuals, one who makes an oral statement and one who embodies it in a writing, if both parties are available to testify at trial as to the accuracy with which each performed his role, the recollection may be admitted. We think such an exception to the hearsay rule is sound and adopt it here." (internal citation omitted)). The *Alatorre* court concluded that the trial court did not abuse its discretion in reading the victim's statement into evidence because the witness stated that she spoke truthfully during the statement and the police detective "testified without challenge that the tape-recording was an accurate recording of [the witness's] statements and that the transcript of the recording was faithful as well." *Alatorre*, 953 P.2d at 1265.

We think the multi-party situation described in the foregoing cases, in which both the recording police officer and the witness must testify regarding the accuracy of the record and the transcription, is limited to written transcripts and does not apply when a party is seeking to admit the actual audio recording itself. The Third Circuit's analysis in *United States v. Mornan*, 413 F.3d 372 (3d Cir.2005), supports this conclusion. In that case, the court distinguished *United States v. Porter*, 986 F.2d 1014 (6th Cir.1993), and *Parker v. Reda*, 327 F.3d 211 (2d Cir.2003), in holding that the witness had not "made or adopted" the memorandum or record for purposes of Fed.R.Evid. 803(5). *Mornan*, 413 F.3d at 378. The court reasoned that "the recording was made by a typist and . . . the Government did not show that [the witness] either reviewed or adopted the examiner's recording." *Id.* Indeed, the witness had not reviewed the written transcription of her original videotaped statement, she had not signed the written transcription, and the Government had not called the official examiner who transcribed the statement "to establish that the recording accurately reflected [the witness's] oral statement." *Id.*

An audio recording differs from a transcribed document. This conclusion is apparent from the Vermont Supreme Court's holding that "the testimony of the police officer who tape-recorded the statement is sufficient to establish that the statement was made by the witness." *State v. Marcy*, 165 Vt. 89, 680 A.2d 76, 78 (1996). Although the court dealt with a police officer's testimony regarding whether the witness "made or adopted" an audio recording, as opposed to the testimony of the witness as we have here, the analysis is still instructive. During the trial in *Marcy*, the police officer who took the statement testified that "the victim appeared to be alert and to understand what she was doing while [the officer] was tape-recording the interview, and . . . she showed no indication that she was having trouble remembering the events. . . ." *Id.* at 77. The Vermont decision does not tell us whether the police officer specifically testified that he accurately tape-recorded the statement of the witness, normally a requirement

when multiple participants are involved in the creation of a memorandum or record, or whether the officer testified that the witness properly *made* the statement under no outside influences.

The Vermont court in *Marcy* combined its discussion of two parts of the recorded recollection requirements—that the witness "made or adopted" the record and that the statement accurately reflects the witness's knowledge. The result in *Marcy* is nonetheless consistent with *Montano* and *Alvarado*. The *Marcy* court said:

> A number of courts have ruled statements inadmissible as past recollection recorded because the statements were not sworn, signed by the witness, or otherwise affirmed by the witness as accurate. Closer examination of those cases reveals, however, that the statements involved were not prepared by the witness, but by another person, usually a law enforcement agent. Understandably, where a prior statement was prepared by a person other than the witness, courts have relied on or even required evidence that the witness had sworn or otherwise affirmed the accuracy of the prepared statement, to satisfy the requirement that the witness adopted the statement. Here, there is no dispute that the witness herself gave the tape-recorded statement. The question before us is whether the State presented sufficient evidence to show that the tape-recorded statement accurately reflected the witness's knowledge of the assault.

*Marcy,* 680 A.2d at 79. The court essentially concluded that because there was no dispute that the witness gave the tape-recorded statement, she "made" the recording for purposes of Vt. R. Evid. 803(5). *See Marcy,* 680 A.2d at 79. The *Marcy* court thus focused on the second part of the requirement—whether the record "ac-

curately reflect[ed] the witness' knowledge"—and ultimately affirmed the district court's admission of the contents of the statement. *Id.* at 79–80.

Relying on *Marcy,* the court of appeals in this case held that the district court did not abuse its discretion in admitting contents of the audio recording of G.J.'s police interview. The court noted that

> there is no real dispute that G.J. made the statements on the audio recording.... The record demonstrates that G.J. gave the statement at 4:23 a.m. on April 23, 2007, which was only about four hours after the robbery occurred, and [Stone] has not identified anything about the circumstances under which G.J. gave the statement that suggests that the audio-recorded statement does not accurately reflect G.J.'s knowledge of the assault.

*Stone,* 767 N.W.2d at 741.

We hold that for purposes of Minn. R. Evid. 803(5), G.J. "made" the audio recording when the event was fresh in his memory. Although G.J. is not the one who operated the machine that recorded the statement, there is no dispute that it is his voice or his statement reflecting the crime as he observed it. As the court of appeals said, it is undisputed that the audio recording accurately reflects what G.J. stated during the police interview. *See Stone,* 767 N.W.2d at 741. Here, because we hold that G.J. "made" the audio recording for purposes of Rule 803(5), we do not follow the line of cases that address the "adopted" standard in the context of multi-party situations, where the witness makes an oral statement and another party translates that statement into writing.

As the Vermont court in *Marcy* concluded, the admission of an audio recording raises different concerns than a written transcription of an audio recording or a written transcription of an oral statement

made by a witness. The Third Circuit's analysis in *Mornan* of the "made or adopted" standard likewise suggests that the anticipated multi-party transcription situation is limited to cases where a third party transcribes in writing a witness's oral statement, where that witness has not had the opportunity to review the transcription. *See Mornan*, 413 F.3d at 378.

Here, G.J. made an oral statement to a police officer who audio-recorded the statement as G.J. provided it. The police officer who recorded G.J.'s statement did not testify at trial. But there is no dispute that the voice on the recording belongs to G.J. To have required G.J. to personally record his own statement and to stop the recording when he completed his statement would be a hypertechnical interpretation of the "made or adopted" requirement of Rule 803(5). We said in *Walker* that "[a]lways the trustworthiness of the record received in evidence is of paramount concern," and that our case law revealed our "inclination not to be bound by technical rules of exclusion and to grant the trial judge wide discretion." 284 Minn. at 105, 109–10, 169 N.W.2d at 741, 744. The general rule on multi-party statements in the written-record context therefore does not apply here, and we hold that G.J. "made" the audio recording of his statement for purposes of Minn. R. Evid. 803(5). Accordingly, the district court did not abuse its discretion in admitting the contents of the audio recording of G.J.'s police interview as a recorded recollection under Minn. R. Evid. 803(5).

Affirmed.