*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1125**


State of Minnesota,
Respondent,

vs.

Tyrone Xavier Johnson,
Appellant.


**Filed April 6, 2015
Affirmed
Bjorkman, Judge**


Sherburne County District Court
File No. 71-CR-13-1115

Lori Swanson, Attorney General, Matthew Frank, Assistant Attorney General, St. Paul, Minnesota; and

Kathleen A. Heaney, Sherburne County Attorney, Samuel Wertheimer II, Chief Deputy County Attorney, Elk River, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Bjorkman, Presiding Judge; Hudson, Judge; and Smith, Judge.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellant challenges his first-degree assault conviction, arguing that (1) the district court committed prejudicial plain error by admitting as an exhibit the victim's recorded statement to police and (2) the district court abused its discretion by admitting evidence of appellant's prior violent conduct toward the victim. Appellant presents additional challenges to his conviction in a pro se supplemental brief. We affirm.

## FACTS

Appellant Tyrone Johnson and D.A. met in 2012 and moved to Williston, North Dakota the following March. They returned to Minnesota by August 2013, and moved into an apartment in St. Cloud that has four separate bedrooms and a common living area. Johnson rented one of the bedrooms, and D.A. slept on the floor of his room.

During the evening of August 11, Johnson and D.A. had a few beers at home, then went out drinking. Around 1:30 or 2:00 a.m., R.S., who rented another of the bedrooms, was on a couch in the common area. R.S. heard Johnson and D.A. enter the apartment and heard them talking in Johnson's room. R.S. thought Johnson sounded angry; he did not hear D.A. say anything. He also "heard a couple thuds like a couple punches," and then things quieted down. The tenant from the apartment immediately below Johnson's apartment also heard a "loud bang" on her ceiling that night, like "a dresser was hitting the ground."

Around 6:00 a.m. the next morning, D.A. called 911 reporting that he "got the sh-t beat out of" him. St. Cloud Police Officer Scott Wenshau responded and discovered

2

D.A. sitting outside the apartment building next to a bag of groceries. D.A. had blood draining from his left ear, and his face appeared swollen and misshapen. He stated that he thought his ribs were broken and asked to be taken to the hospital.

About two minutes after arriving, Officer Wenshau turned on his personal tape recorder and questioned D.A. He told Officer Wenshau that he had been laying on the floor in Johnson's room four or five hours earlier when Johnson suddenly "snapped." D.A. stated that Johnson started kicking and hitting him and telling him he was going to kill him, then picked up a 30-pound dumbbell and started "slamming" him. D.A. also stated that a roommate had been sleeping on a couch in the open area of the apartment around the time of the assault.

An ambulance took D.A. to the hospital, where he told the treating physician that he was "beat up with a bar bell." D.A. was treated for numerous injuries and was "in obvious pain." He had bruises on his face and left knee and shin. He also sustained multiple front and back rib fractures on his left side, his left lung was collapsed, and his bleeding spleen was surgically removed. Breath testing revealed an alcohol concentration of .105.

Meanwhile, additional officers responded and awoke Johnson. They noticed that he smelled of alcohol and had glassy, watery eyes. The officers also observed a hex dumbbell on the bed, but they did not observe any blood on the dumbbell or any signs of a struggle in the room.

Johnson was charged with first-degree and third-degree assault (harm) and second-degree assault (dangerous weapon). At trial, D.A. was unable to remember fully the

events of August 11-12. He remembered drinking with Johnson and being in the hospital but was unsure what had happened to him and did not recall being assaulted, calling 911, or talking to police. The state presented the audio recordings of D.A.'s 911 call and his statement to Officer Wenshau; Johnson did not object to the recordings being received as exhibits.[1]

The jury also heard testimony about both Johnson's and D.A.'s past conduct. Over Johnson's objection, the district court permitted the state to elicit testimony from D.A. that while he and Johnson were living in Williston, "the two of us were drinking and I got punched and knocked down by the Defendant Mr. Tyrone Johnson. I think one of the bartenders in there called up 9-1-1 or something. And I didn't file or press any charges, kind of let things go." Johnson countered with evidence that D.A. is an alcoholic who has a history of injuring himself while intoxicated and has twice been civilly committed because of alcoholism and mental illness.

Johnson also elected to testify. He stated that on the night in question, D.A. drank five beers, went out with Johnson to drink more, and then went off on his own around 9:30 p.m. with a group of "rough" people. Johnson testified that when he saw D.A. an hour later, D.A. was limping, bruised, and holding his side. Johnson stated that D.A. refused to go back to the apartment so he left D.A. and returned home. Johnson testified that he got home around 1:00 a.m., and that R.S. was not there. D.A. returned later, looking "pretty bad," and Johnson brought him into his bedroom. Johnson testified that

---

[1] Johnson objected to admission of D.A.'s statement to Officer Wenshau on confrontation grounds but does not raise that issue on appeal.

4

D.A. started "hollering and bamming at the wall," and he yelled at D.A. to "straighten up." According to Johnson, D.A. then went outside to smoke, Johnson went to sleep, and the next thing he knew the police were questioning him.

During its deliberations, the jury asked to listen to D.A.'s statement to Officer Wenshau. The district court brought the jury into the courtroom and replayed the recording. The jury found Johnson guilty of first-degree and third-degree assault and acquitted him of second-degree assault. The district court sentenced Johnson to 122 months' imprisonment. Johnson appeals.

## DECISION

### I. The district court did not commit prejudicial plain error by receiving D.A.'s recorded statement to police as an exhibit.

When, as here, the appellant challenges the admission of unobjected-to evidence, we review for plain error. *Montanaro v. State*, 802 N.W.2d 726, 732 (Minn. 2011). In applying the plain-error test, we will reverse only if the district court (1) committed an error; (2) that was plain; (3) that affected the defendant's substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Hearsay is generally inadmissible. Minn. R. Evid. 802. But a "memorandum or record" concerning a matter about which a witness once had knowledge and made when the matter was fresh in the witness's memory may be admissible if the witness has insufficient recollection to testify fully and accurately. Minn. R. Evid. 803(5). "If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party." *Id.* We review the

5

interpretation of this language de novo. *State v. Stone*, 784 N.W.2d 367, 370 (Minn. 2010).

Johnson concedes that D.A.'s statement was a recorded recollection that "could be played for the jury during the trial." But he contends that the district court committed prejudicial plain error by admitting the recording as an exhibit, with the result being that the jury heard the recording twice. We are not persuaded. First, the plain language of rule 803(5) precludes admission of a document—a "memorandum or record"—but does not expressly prevent a district court from permitting more than one auditory presentation of the evidence. This distinction is consistent with the concern that providing the jury a "hearsay document" could lead it to place "undue emphasis on the statement." Minn. R. Evid. 803(5) 1989 comm. cmt. And neither the rule nor the comment suggest a limit on the number of times the jury may hear a recorded recollection.

Second, and more importantly, Johnson has not demonstrated that the district court's treatment of D.A.'s recorded recollection impaired his substantial rights. To satisfy this third prong of the plain-error test, Johnson must demonstrate that the asserted error was prejudicial and affected the outcome of the case. *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998). "Error is prejudicial if there is a reasonable likelihood that the error had a significant effect on the jury's verdict." *State v. Barrientos–Quintana*, 787 N.W.2d 603, 611 (Minn. 2010) (quotation omitted). Johnson argues that the jury's request to rehear the recording of D.A.'s statement demonstrates that it unduly focused on the recording. We disagree. The recording was substantive evidence properly before the jury, as Johnson concedes. Its admission as an exhibit merely permitted the jury to

6

hear it twice, rather than once. *See State v. Kendell*, 723 N.W.2d 597, 613 (Minn. 2006) (stating that it is not error to permit a jury to rehear a properly admitted taped interview of a victim). The jury also heard a recording of D.A.'s 911 call, Officer Wenshau's testimony about D.A.'s statement and his observations of D.A., medical evidence about D.A.'s injuries, and R.S.'s testimony about the events of August 12. Nothing in this record reasonably suggests that receiving the recorded recollection as an exhibit, which allowed the jurors to hear it twice, significantly affected the verdict. Accordingly, we conclude that Johnson's plain-error claim fails.

## II. The district court did not abuse its discretion by admitting *Spreigl* evidence.

Evidence of a defendant's prior crimes or bad acts is not admissible to prove the defendant's character for purposes of showing that he acted in conformity with that character. Minn. R. Evid. 404(b). But this *Spreigl* evidence may be admissible for other limited purposes. *Id.*; *see also State v. Clark*, 738 N.W.2d 316, 345 (Minn. 2007). We review the admission of *Spreigl* evidence for an abuse of discretion. *State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006).

Johnson argues that the district court abused its discretion by admitting evidence of his prior assault against D.A. because it is irrelevant, any probative value is outweighed by its potential prejudice, and its admission was unfairly prejudicial. We address each of these issues in turn.

### Relevance

*Spreigl* evidence must be "relevant to the prosecutor's case." Minn. R. Evid. 404(b)(4). A district court "should not simply take the prosecution's stated purposes for

7

the admission of other-acts evidence at face value" but independently determine "the precise disputed fact to which the *Spreigl* evidence would be relevant." *Ness*, 707 N.W.2d at 686. On appeal, we consider whether the rationale cited by the district court provides a proper basis upon which to admit the evidence. *State v. Rossberg*, 851 N.W.2d 609, 615-16 (Minn. 2014).

Johnson first argues that the district court failed to identify the "precise disputed fact" to which the evidence is relevant. We are not persuaded. The district court explained that the state sought to use the *Spreigl* evidence "for purposes of showing intent and a common scheme or plan" and stated that it would "grant the State's request to use that." This discussion adequately, if implicitly, indicates that the district court admitted the evidence as relevant to intent and common scheme or plan—both recognized, permissible purposes. *See* Minn. R. Evid. 404(b); *Ness*, 707 N.W.2d at 687.

Johnson next asserts that the evidence is not relevant for either of these purposes. We disagree. The *Spreigl* evidence is relevant to show a common scheme or plan. *Spreigl* evidence is admissible under the common-scheme-or-plan exception to refute a claim, like that asserted here, "that the victim's testimony was a fabrication or a mistake in perception." *Ness*, 707 N.W.2d at 688. Evidence offered for this purpose must have a "marked similarity in modus operandi to the charged offense." *Id.* The closer the other conduct is to the charged offense in terms of time, place, and modus operandi, the greater its relevance. *State v. Clark*, 738 N.W.2d 316, 346 (Minn. 2007). That standard is met here. The previous incident occurred no more than six months before the charged offenses; both incidents involved Johnson and D.A. drinking alcohol together, followed

by Johnson punching D.A. *See State v. Kennedy*, 585 N.W.2d 385, 391 (Minn. 1998) (affirming use of common-scheme-or-plan evidence when prior incident and charged offense occurred within six months of each other and involved the same victim). Evidence of this markedly similar conduct is relevant to show common scheme or plan and counter Johnson's claim that D.A. fabricated or was mistaken about the assault.

### Potential for unfair prejudice

*Spreigl* evidence is admissible only if its probative value outweighs its potential for unfair prejudice to the defendant. Minn. R. Evid. 404(b)(5). Johnson argues that the evidence presented an unwarranted risk of unfair prejudice because it was "irrelevant to any disputed issue in this case" and not necessary. We disagree. D.A.'s recorded statement identifying Johnson as his assailant sufficiently establishes the elements of the charged offenses. But Johnson challenged the reliability of that statement, which D.A. gave while under the influence of alcohol and could not remember at the time of trial, and presented his own contradictory testimony. The *Spreigl* evidence is helpful in weighing the two men's credibility. While the evidence, like all *Spreigl* evidence, presents some risk of unfair prejudice, we conclude that risk is outweighed by its substantial relevance.

### Prejudice

Erroneous admission of *Spreigl* evidence warrants reversal only if the defendant demonstrates prejudice. *Clark*, 738 N.W.2d at 347. Prejudice exists when "there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *Id.* (quotation omitted). In evaluating prejudice, we consider a number of factors, including whether the state presented other evidence on the issue; whether the

district court gave a jury instruction limiting the use of the evidence; whether the state dwelled on the evidence in closing argument; and whether the evidence of guilt was overwhelming. *State v. Riddley*, 776 N.W.2d 419, 428 (Minn. 2009).

Johnson contends that reversal is necessary because the *Spreigl* evidence suggested that Johnson had a propensity for violence toward D.A. and the district court failed to instruct the jury not to consider the evidence for this purpose. Johnson's concerns are well taken. But we are not persuaded, upon review of the entire record, that they warrant reversal.

First, the omission of a limiting instruction is attributable to Johnson. A district court "should admonish the jury" both at the time the evidence is received and in the final charge that the *Spreigl* evidence is received for only a specific limited purpose and that the defendant "may not be convicted for any offense except that charged." *State v. Billstrom*, 276 Minn. 174, 179, 149 N.W.2d 281, 285 (1967). Such a limiting instruction minimizes the risk of jurors misusing *Spreigl* evidence, *Rossberg*, 851 N.W.2d at 616, and should be given "even in the absence of a request" from the defendant, *State v. Frisinger*, 484 N.W.2d 27, 31 (Minn. 1992). But "the failure to provide limiting instructions absent a request is not reversible error."[2] *State v. Williams*, 593 N.W.2d 227, 237 (Minn. 1999), *cert. denied*, 528 U.S. 874, 120 S. Ct. 180 (1999). Johnson did not request a limiting instruction.

Second, the *Spreigl* evidence played an extremely small role in the trial. After initially indicating that he would "prefer not to comment," on the prior incident, D.A.

---

[2] Johnson does not assert that omission of a limiting instruction was error.

10

testified only that Johnson punched him in a bar in Williston, the police were called, and he did not press charges. There was no further testimony about the incident from any witness. And the prosecutor made only one oblique reference to the *Spreigl* evidence in closing argument. He emphasized that D.A. "was beaten by somebody he thought was his friend. In fact, [D.A.] didn't even really want to talk about what happened in Williston."

Third, the evidence against Johnson is strong. The jury was presented with two distinct versions of how D.A. sustained his severe injuries, but only D.A.'s statement that Johnson hit and kicked him and "slamm[ed]" him with a dumbbell finds corroboration in the record. Specifically, Officer Wenshau explained that D.A. was alert and oriented when he gave his statement and answered all of Officer Wenshau's questions and gave specific details. And police found a dumbbell in Johnson's bedroom.

On this record, we conclude that any possible error in admitting the *Spreigl* evidence does not require reversal.

## III. Johnson's pro se arguments lack merit.

Johnson challenges the sufficiency of the evidence to sustain his conviction. When considering a sufficiency-of-the-evidence challenge, we view the evidence in the light most favorable to the conviction to determine whether a jury could reasonably conclude that the defendant was guilty of the offense. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989).

11

To prove first-degree assault, the state was required to prove that Johnson intentionally inflicted bodily harm on D.A. that created a "high probability of death" or caused "serious permanent disfigurement" or "a permanent or protracted loss or impairment of the function of any bodily member or organ." Minn. Stat. §§ 609.02, subd. 8, .221, subd. 1 (2012). The evidence, viewed in a light most favorable to the verdict, amply establishes these elements. D.A. explained that Johnson punched him, kicked him, and struck him with a dumbbell, all while threatening to kill him. Officer Wenshau and D.A.'s treating physician testified that these acts resulted in D.A.'s facial bruising and swelling, numerous broken ribs, a punctured lung, and a spleen so damaged it had to be surgically removed to prevent him from bleeding to death. We conclude that this evidence is sufficient to support Johnson's first-degree assault conviction.

Johnson also argues that the inadequate and weather-inappropriate courtroom attire his attorney provided unfairly revealed to the jury that he was in custody. It is unclear whether this is a challenge to the adequacy of his attorney's efforts or a due-process challenge, but it is unavailing either way. A defendant has a right not to appear in court in "the distinctive attire of a prisoner." Minn. R. Crim. P. 26.03, subd. 2(b); *see also State v. Lehman*, 749 N.W.2d 76, 84 (Minn. App. 2008) (recognizing due-process concerns in preventing defendant from wearing alternative clothing), *review denied* (Minn. Aug. 5, 2008). But the record does not indicate that Johnson presented this concern to the district court; it does not establish what efforts, if any, his attorney went to in order to provide alternative clothing; and importantly, it does not indicate that he was prejudiced by the clothing and footwear he had during trial. *See* Minn. R. Crim. P. 31.01

12

("Any error that does not affect substantial rights must be disregarded.").  Accordingly, we conclude Johnson is not entitled to relief on this basis.

**Affirmed.**